## James Foley and Francis T. Johnson, Appellants, v. James W. Hedenberg, Appellee.

### Gen. No. 22,376.

1. VENDOR AND PURCHASER, § 16*—*what is nature and effect of option on property.* By giving a written option on his property, the owner confers on the one to whom it is given something of value, which is the right or privilege to call for and receive the property if he so elects.

2. VENDOR AND PURCHASER, § 16*—*when option is mere offer subject to withdrawal.* Where no consideration is given for an option, it is merely an offer which may be withdrawn at any time before a tender of compliance.

3. BROKERS, § 30*—*when oral agreement for division of commissions between is binding.* Oral agreement between real estate agents whereby one agent promises to divide his commission with another in case of a sale of certain property, *held* binding on the former even though the latter so effected the sale at an advance in the price specified in the option under which he held the property as to derive a profit for himself therefrom.

4. BROKERS, § 30*—*when fiduciary relations between not shown.* In an action by one real estate agent against another to recover on an agreement for the division of commissions, evidence *held* not to show the existence of any fiduciary relation between such agents.

Appeal from the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1916. Reversed and remanded. Opinion filed October 31, 1917.

THOMPSON, TYRRELL & CHAMBERS, for appellants.

BRADLEY, HARPER & EHEIM, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This was an action of the first class commenced in the Municipal Court of Chicago by the plaintiffs

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

(appellants) to recover a portion of certain commissions which the defendant had been paid for the sale of a piece of real estate. The case was tried by the trial judge without a jury and, at the close of all the evidence, judgment for costs was entered. in favor. of the defendant and against the plaintiffs.

On July 23, 1913, a written contract of sale of a certain northeast quarter section of real estate was entered into by one Peter Foley and Malvina B. Armour. The contract was signed by Peter Foley and "Malvina B. Armour, by James W. Hedenberg, her agent." It recites, among other things, that the purchaser had paid $2,500 as earnest money to be applied on the purchase when consummated. It was also provided in the contract that Peter Foley was given the privilege to purchase the southwest quarter of the same section, "said privilege to expire December 31, 1914." It was further provided in the said contract that "the said earnest money should be held by James W. Hedenberg for the mutual benefit of the parties concerned," and upon the consummation of the sale "to apply the same, first, to the payment of any expenses incurred for the vendor by his agent in said matter, and second, to the payment to vendor's broker of all commission * * * for his services in procuring this contract, rendering the overplus to the vendor." On August 27, 1913, a letter was written, signed "Belle Ogden Armour, by James W. Hedenberg, her agent" to Peter Foley, which contains the following: "Referring to our contract of July 23, 1913, covering the northeast quarter of Section 34 * * * and the understanding in that contract that you or your assigns should also have the refusal to purchase the southwest quarter of said section * * *. You or your assigns are to have this privilege until the 31st day of December, 1914, at $500 per acre, plus 6% per annum from the date of your contract, July 23, 1913, to the date on which you or

your assigns exercise this privilege.  *  *  *  It is also understood that if on request this option should be extended  *  *  *  it will not release you or your assigns from paying the current taxes for 1914.'' Subsequently the option was extended to March 1, 1915. The sale of the northeast quarter was consummated on September 13, 1913, and the plaintiffs received, altogether, as compensation for their services, from the defendant, two-thirds of 5 per cent. of the selling price, the defendant retaining one-third. In making a settlement of the purchase price, each of the plaintiffs was given, by the defendant, a credit of $1,000 on the purchase price and $343 in cash. After that option was exercised and the deed passed, each of the plaintiffs was part owner of the northeast quarter.

In the instant case, it is claimed by the plaintiffs that they are entitled to commissions for the sale of the southwest quarter—an amount practically equivalent to that which was paid them by the defendant for the sale of the northeast quarter; that the defendant orally agreed with them to pay them, if the option was carried out and a purchaser obtained by them for the southwest quarter, two-thirds of 5 per cent. of the commission he, the defendant, was to get from his principal. The defendant admitted, in his testimony, that, as to the commission to be paid in case the southwest quarter section was sold, he had said he would give them each one-third of that commission if the southwest quarter was sold to the same party as the northeast quarter. From other testimony of the defendant, however, it may be inferred that it made no difference to the defendant to whom the southwest quarter was sold, and that, therefore, his statement, that he said he would pay the commission if sold to the same party as the northeast quarter, is not credible, but an effort at evasion. James T. Foley testified that, at the time of the settlement of

the commission for the sale of the northeast quarter, when a question came up about the option on the southwest quarter, the defendant said that they (meaning plaintiffs) "will not receive any commission on that until the option has been used or exercised"; also, that on a subsequent occasion, in the latter part of 1914 he had a talk with the defendant, in the course of which the latter said that his (meaning the plaintiff's, Foley's) interest would be protected. The plaintiff Foley further testified that in March, 1915, after the sale of the southwest quarter was consummated, he went to see the defendant and the latter said that at one time he thought they, the plaintiffs, were entitled to and had earned their commissions but he had changed his mind. The testimony of the plaintiff Johnson was to the effect that on November 12, 1914, in the presence of both plaintiffs and defendant, when asked by Johnson about the commission as to the southwest quarter, whether he was going to pay part of the commission as promised at the time the first deal was made, the defendant said, "Yes, the same as on the previous deal of the northeast quarter." Johnson further testified that, in a conversation prior to November 12, 1914, with the defendant, the latter, with reference to payment of a commission to the plaintiffs on the sale of the southwest quarter, said: "It must be understood that you get no commission at this time on the southwest quarter, it being an option, but if the land is sold by virtue of this option, you will receive two-thirds of 5 per cent. on the purchase price." The plaintiffs obtained a purchaser and negotiated a sale of the southwest quarter, pursuant to the terms of the option. The original option of the southwest quarter given to Peter Foley (for the convenience of the plaintiffs) had been assigned, by him, to one Thompson and, by the latter, to Frederick H. Bartlett, and the deal was consummated by a deed passing from the grantor, Armour, to one

William P. Haughton (of Bartlett's office), the option then being extinguished by merger in the completed sale. Upon the completion of the sale of the southwest quarter, the defendant retained, out of the purchase price, his commission of 5 per cent., which amounted to $4,345.33; that is, out of the check received from Bartlett as part of the purchase price, the defendant retained his commission of 5 per cent. and transmitted the balance to Armour & Company, on behalf of his principal. The plaintiffs then demanded two-thirds of the $4,345.33, and upon his refusal brought this suit.

It is the legal contention of appellee that the plaintiffs "by secretly dealing in the subject-matter of the agency without the knowledge or consent of the defendant, making a profit of an amount far in excess of the amount of their claim for commissions, destroyed entirely their right to claim commissions."

The price fixed for the southwest quarter section, by the contract of July 23, 1913, as it is set forth in the letter of the defendant of August 27, 1913, was $500 per acre, together with certain interest and taxes. When, however, the option was sold through the plaintiffs to the purchaser, Bartlett, and the deed passed to Haughton, of Bartlett's firm, the latter was charged, in addition to $500 per acre, interest and taxes, the following extra consideration: (1) 100 by 125 feet of vacant real estate on Prairie Avenue, Chicago, about 90 feet south of 37th Street; (2) 50 by 125 feet of vacant real estate on 29th Place, 75 feet east of Calumet Avenue, and $1,500 in cash. The record does not show accurately how the extra consideration was divided, although the plaintiff Johnson testified that he received $1,750 in cash and the vacant real estate on 29th Place. What extra consideration the plaintiff Foley received from Bartlett, when the sale was consummated, does not clearly appear.

The question arises, therefore, as to what relations arose between the defendant and the plaintiffs (Peter Foley being merely the ostensible owner of the option), by reason of the contract of July 23, 1913. The letter of August 27, 1913, of the defendant, contains the language, "and the understanding in that contract that you or your assigns should also have the refusal to purchase the southwest quarter of said section" and "you or your assigns are to have this privilege until the 31st day of December, 1914, at $500 per acre." Evidently the intention was to give to the plaintiffs, in the name of Peter Foley, a right of purchase on certain terms and within a certain time, which right, until the expiration of the specified period, that is, December 31, 1914 (subsequently extended to March 1, 1915), remained, on the part of the defendant, a continuing offer until ultimately, on January 22, 1915, it ripened into a sale. During that time, assuming that the option was given for a consideration, which is the fact, neither the defendant himself nor his principal could sell the property in question. To the letter of August 27, 1913, the defendant signed the words "Belle Ogden Armour, by James W. Hedenberg, her agent," and that must be considered as the act of the principal and as binding upon her as to all the terms of the option. There is, of course, considerable difference between an option, such as the one in question here, and the customary agency to sell. It does not give rise to fiduciary relations, such as spring from a trust or agency, or personal employment. In the instant case, Peter Foley was not an agent, he was a principal. He was not given merely a power of attorney, as in the conventional case of a real estate agent, but he was given such a right that even the owner himself could not, during a certain period, sell the property free from that restriction. When the owner gave the written option to the plaintiffs, he gave them the right, or

privilege, to buy the property at their election, or option. They got, *in præsenti*, as the court said in *Ide v. Leiser*, 10 Mont. 5, not lands, or an agreement that they should have lands, but they got something of value; that is, the right to call for and receive lands if they elected. If there had been no consideration given by the plaintiffs for the option, it was merely an offer and could have been withdrawn at any time prior to a tender of compliance. In the instant case, not only was there a consideration, but performance, on the part of the plaintiffs, and compliance on the part of the seller.

The matter involved in this case, however, does not in any way pertain to the rights of the original owner, Armour, or those of the ultimate purchaser, Haughton. Neither seller nor purchaser is in any way interested in the alleged oral contract made between the plaintiffs and the defendant, as to the disposition or distribution of the five per cent. commission. The question is whether the defendant, who was to receive a commission from his principal, Armour, was bound by his promise to the plaintiffs that, in case the option ripened into a sale, he would pay them two-thirds of the commission, which his employer would have to pay him. That is, whether he was bound, even though the plaintiffs not only brought about a sale, by obtaining a purchaser, but made a profit out of that purchaser by getting the latter to agree to pay more than the price specified in the original option. It is difficult to discover any reason why the defendant should not be bound by his promise. No fiduciary relations arose between the defendant, the seller's agent, and the plaintiffs. The latter did not owe any obligations to him. It made no difference to him what the plaintiffs did, in regard to the property, providing the terms of the option were carried out at the price fixed. Even though the price obtained was greater than that specified in the option, the excess

in no event belonged to him, the defendant. Whether or not the owner could have claimed that excess, is here immaterial. Certainly her agent was not entitled to it and so cannot now claim that, by reason of that excess going to the profit of the plaintiffs, he is now entitled to repudiate his promise to pay them part of the commission which was earned by reason of their services.

It was not fraudulent in law for the holders of the option to sell it for more than $500 per acre, and, at the same time, have a contract outstanding with defendant (the owner's agent) that they, the plaintiffs, should, in case of sale at $500 per acre, be entitled to part of the commission the defendant would get from the owner. The owner empowered the defendant, her agent, to sell at $500 per acre; and she (through her agent) gave the option to Peter Foley, in whose name the option was taken, for the convenience of the plaintiffs. The latter are legal and actual strangers to her. They sold their right in the option to Bartlett and the owner (Armour) received all she asked and all she, through her agent, the defendant, had contracted for and all she was entitled to. There is no evidence of any dissatisfaction upon her part. This is merely a matter between the defendant and the plaintiffs; whether the promise of the former to pay to the plaintiffs two-thirds of what he was to get for his services from his employer was binding upon him. Neither the seller nor the buyer is a party to this suit, nor, in any way, interested in these proceedings. In making the promise to the plaintiffs, of two-thirds of his commission in case of a sale, he did so in order that he might profit to the extent of one-third of the commissions, by reason of their services.

Inasmuch as the judgment in the trial court was entered in favor of the defendant on the theory that as a matter of law the plaintiffs were not entitled to recover, and as we are of the opinion that if, as a

matter of fact, the defendant did promise to pay the plaintiff's part of the commission upon the sale of the southwest quarter, then the plaintiffs are entitled to recover, the judgment is reversed and the cause remanded.

*Reversed and remanded.*