RALPH DiLORENZO, Plaintiff-Appellant, v. VALVE AND PRIMER CORPORATION, a/k/a Apco Valve and Primer Corporation, Defendant-Appellee.

First District (5th Division) No. 1—01—2803

Opinion filed March 19, 2004.

Munday & Nathan, of Chicago (Thomas J. Nathan and Jeffrey A. Schulkin, of counsel), for appellant.

Sopuch, Nouhan, Higgins, Arnett & Gaubert, L.L.P., of Chicago (John A. Sopuch III, of counsel), for appellee.

JUSTICE REID delivered the opinion of the court:

Following the grant of summary judgment in favor of defendant Valve & Primer Corporation (Valve & Primer) and the denial of summary judgment in favor of Ralph DiLorenzo in the underlying chancery action seeking specific performance, DiLorenzo filed the instant appeal. We issued an opinion dated September 6, 2002, which we subsequently vacated pursuant to a supervisory order of the Illinois Supreme Court. Thereafter, we issued another opinion in an attempt to comply with that supervisory order. The supreme court issued another supervisory order in this matter. In addition to ordering

this court to vacate the prior opinion, that supervisory order, dated October 29, 2003, directed us as follows:

"The appellate court is once again directed to consider whether the record raises any genuine issues of material fact regarding whether there was adequate consideration for the purported stock option agreement itself, wholly apart from the issue of the adequacy of consideration in the subsequent attempted purchase of the stock. In light of this determination, the appellate court is directed to reconsider whether any factual issue regarding the authenticity of the corporate minutes is material, thereby precluding the entry of summary judgment." *DiLorenzo v. Valve & Primer Corp.*, 205 Ill. 2d 579 (2003).

For the reasons that follow, we now affirm.

## BACKGROUND

DiLorenzo was an officer, director and shareholder of 100 shares of stock of Valve & Primer. M. Chris Dickson was the chief executive officer and majority shareholder of Valve & Primer. DiLorenzo was employed by Valve & Primer for approximately 40 years prior to the events that led to this lawsuit.

According to DiLorenzo, on or about May 12, 1987, he informed Valve & Primer that he wanted incentives in any future employment agreements. DiLorenzo claims that, through Dickson, Valve & Primer offered him a 10-year stock option that would allow DiLorenzo to purchase an additional 300 shares at the fixed price of $250 per share. Dickson and the board of directors allegedly favorably voted on the agreement at a meeting held on June 8, 1987. DiLorenzo claims he received a copy of the minutes of that meeting. DiLorenzo also claims that in reliance on the minutes of the special board meeting, which were never altered or revoked by the board of directors during the time he remained employed by Valve & Primer, he stayed in his job for over nine additional years. According to DiLorenzo, while he was working for Valve & Primer, in reliance upon the minutes of the special board meeting, when he was approached by other companies with employment opportunities he did not follow up on any of these recruitment offers.

Valve & Primer claims the 1987 employment agreement between it and DiLorenzo did not contain a stock purchase agreement. The only purported proof of the agreement is an unsigned copy of board meeting minutes of which DiLorenzo had the only copy. Valve & Primer claimed the purported minutes were inconsistent in subject matter and format from other corporate minutes it produces in the ordinary course of business.

In January 1996, DiLorenzo entered into a semi-retirement agree-

ment with Valve & Primer. Valve & Primer claims he attempted to tender his remaining 100 shares pursuant to a stock redemption agreement. According to Valve & Primer, DiLorenzo demanded $4,000 per share for the remaining 100 shares. It claims DiLorenzo admitted he came up with the proposed share value himself and that no one of any expertise valued the stock. DiLorenzo responded that he had corporate accountants review financial statements before valuing the company's shares. Valve & Primer declined to purchase the shares at DiLorenzo's price. This resulted in a dispute between DiLorenzo and Valve & Primer through Dickson. Shortly thereafter, Valve & Primer fired DiLorenzo. After the termination, DiLorenzo claims he attempted to exercise the purported stock purchase agreement.

In addition to DiLorenzo, George Christofidis, another longtime employee, attempted to exercise the stock option. DiLorenzo claims that Christofidis sent a copy of the minutes supporting the claimed stock purchase agreement to Valve & Primer's corporate attorney. Christofidis allegedly indicated that the purported stock purchase agreement supported DiLorenzo's claim in that the agreement was included as part of the overall employment agreements both DiLorenzo and he signed. DiLorenzo claims that, in 1997, a subsequent employment agreement between Valve & Primer and Christofidis required him to waive any exercising of the stock option agreement referred to in the June 1987 corporate minutes. In the alternative, DiLorenzo argued before the trial court that, even if the purported agreement was not found to be valid, it should be enforced along promissory estoppel grounds.

Cross-motions for summary judgment were filed during the litigation below. The trial court granted summary judgment in favor of Valve & Primer while denying DiLorenzo's cross-motion. The trial court found that, even assuming the corporate minutes were valid, the purported agreement did not require that DiLorenzo perform any affirmative act. The trial court also found there was insufficient consideration to support the stock option. The trial court further found there was insufficient reliance on DiLorenzo's part to support a claim for promissory estoppel.

## STANDARD OF REVIEW

■ In cases involving motions for summary judgment, we conduct a *de novo* review of the evidence in the record. *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 185-86 (2002), citing *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995). The purpose of a summary judgment proceeding is not to try an issue of fact, but to determine whether any genuine issue of material fact exists. *Happel,*

199 Ill. 2d at 186, citing *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 31 (1992); *Housh v. Swanson*, 203 Ill. App. 3d 377, 381 (1990). It is a " 'drastic means of disposing of litigation' " and therefore should be granted only when " 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Happel*, 199 Ill. 2d at 186, quoting *Espinoza*, 165 Ill. 2d at 113, and 735 ILCS 5/2—1005(c) (West 2000). For purposes of summary judgment, we construe the facts strictly against the moving party and in the light most favorable to the nonmoving party. *Happel*, 199 Ill. 2d at 186, citing *Espinoza*, 165 Ill. 2d at 113, and *Frye*, 153 Ill. 2d at 31.

## ANALYSIS

DiLorenzo argues on appeal that the trial court misapplied the law in finding there was insufficient consideration to support the stock option agreement. He argues that substantial continued employment is sufficient consideration for agreements entered into in the employment setting. DiLorenzo argues that he has provided consideration for the stock option. It was as an incentive for continued employment. He also argues that, even if there was an initial lack of consideration, performance may ameliorate an initial lack of consideration, if the performance was clearly invited. He claims his continued employment for nine years in reliance on the agreement satisfied the condition of the performance being invited. Here he claims Valve & Primer benefitted both from the pre-1987 employment and the post-1987 work. DiLorenzo argues that he was not promising to do something he was already obligated to do, which he concedes would not be valid consideration.

Valve & Primer responds that the trial court correctly granted it summary judgment because DiLorenzo failed to show any consideration to support the alleged stock option. Valve & Primer, without admitting that the board meeting minutes are genuine, argues that they indicate that the alleged stock option was given to "reward" him for his long service to the company. Valve & Primer's position is that, if the alleged consideration for a promise has been conferred prior to the promise upon which the alleged agreement is based, then no contract is formed. Valve & Primer also argues that the argument that the option was based, at least in part, on his claimed continued employment must fail because it relies on something DiLorenzo was already obligated to do. According to Valve & Primer, because DiLorenzo contends that the stock option vested immediately, only past performance could serve as consideration. As the trial court noted,

that is insufficient consideration. Additionally, if the alleged option did not vest, DiLorenzo could not bring his claim. Either way, Valve & Primer argues, there is no way DiLorenzo could have prevailed at the trial court level.

In reply, DiLorenzo contends that there is sufficient consideration to support the stock option. He argues that whether the 1987 corporate minutes are authentic is not an issue on appeal. Since the trial court took the minutes as true, the appellate court should do likewise. DiLorenzo argues that any suggestion or innuendo by Valve & Primer that the minutes are not valid should be disregarded by this court.

The purported minutes of the June 8, 1987, special meeting contain the following relevant language:

> "That in order to *retain and reward* such dedication George Christofidis be given an option to purchase additional shares not to exceed 300; and that Ralph DiLorenzo be given an option to purchase additional shares not to exceed 300. Said option to be exercised within 10 years from below date at the price of $250.00 per share. Each share was to be restricted wherein the share must first be offered to Valve and Primer Corporation to be paid by Valve and Primer Corporation and held as Treasury Stock. Valve and Primer Corporation would be given 45 days to consummate the purchase. In the event that Valve and Primer Corporation did not choose to purchase, said stock would be offered to the existing shareholders on a pro rata basis also to be purchased within 45 days. And in the event the shareholders did not purchase said shares, the shares could be sold to any interested person or persons. Purchase price of shares would be based upon the book value pursuant to a certified audit of the worth of the Corporation at the time of sale." (Emphasis added.)

■ We begin by addressing whether there was consideration for the stock options. "A stock option is the right to buy a share or shares of stock at a specified price or within a specified period." *Hmelyar v. Phoenix Controls*, 339 Ill. App. 3d 700, 705 (2003), citing Black's Law Dictionary 1431 (7th ed. 1999), and *International Business Machines Corp. v. Bajorek*, 191 F.3d 1033, 1039 (9th Cir. 1999). In order to evaluate the nature and scope of the stock options issued to DiLorenzo, we must assume, for purposes of this portion of our discussion, that DiLorenzo's corporate minutes are valid.

■ "A contract, to be valid, must contain offer, acceptance, and consideration; to be enforceable, the agreement must also be sufficiently definite so that its terms are reasonably certain and able to be determined." *Halloran v. Dickerson*, 287 Ill. App. 3d 857, 867-68 (1997), citing *Ogle v. Hotto*, 273 Ill. App. 3d 313, 319 (1995). "A contract is sufficiently definite and certain to be enforceable if the

court is able from its terms and provisions to ascertain what the parties intended, under proper rules of construction and applicable principles of equity." *Halloran*, 287 Ill. App. 3d at 868, citing *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 314 (1987). "A contract may be enforced even though some contract terms may be missing or left to be agreed upon, but if essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Halloran*, 287 Ill. App. 3d at 868, citing *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30 (1991). A bonus promised to induce an employee to continue his employment is supported by adequate consideration if the employee is not already bound by contract to continue. *Gustafson v. Lindquist*, 40 Ill. App. 3d 152, 157 (1976), citing 1A Corbin on Contracts § 192 (1963). Because we are assuming the validity of the document issuing the stock options, we now turn to whether the underlying option is supported by valid consideration so as to make it a proper contract.

 "Consideration is defined as the bargained-for exchange of promises or performances and may consist of a promise, an act or a forbearance." *Bishop v. We Care Hair Development Corp.*, 316 Ill. App. 3d 1182, 1198 (2000), citing Restatement (Second) of Contracts § 71 (1981).

> "The general principles applicable to option contracts have been long established. An option contract has two elements, an offer to do something, or to forbear, which does not become a contract until accepted; and an agreement to leave the offer open for a specified time (*Bonde v. Weber*, 6 Ill. 2d 365, 374 (1955)), or for a reasonable time (*Bates v. Woods*, 225 Ill. 126, 130-31 (1906)). An option contract must be supported by sufficient consideration; and if not, it is merely an offer which may be withdrawn at any time prior to a tender of compliance. (*Foley v. Hedenberg*, 208 Ill. App. 163, 169 (1917), *aff'd*, 285 Ill. 210 (1918).) If a consideration of 'one dollar' or some other consideration is stated but which has, in fact, not been paid, the document is merely an offer which may be withdrawn at any time prior to a tender of compliance. The document will amount only to a continuing offer which may be withdrawn by the offeror at any time before acceptance. (*Threlkeld v. Inglett*, 289 Ill. 90, 94-95 (1919).) The consideration to support an option consists of 'some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other' (*Lipkin v. Koren*, 392 Ill. 400, 406 (1946)); or otherwise stated, 'Any act or promise which is of benefit to one party or disadvantage to the other ***.' *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 330 (1977)." *Hermes v. Wm. F. Meyer, Co.*, 65 Ill. App. 3d 745, 749 (1978).

"The preexisting duty rule provides that where a party does what it is already legally obligated to do, there is no consideration because there has been no detriment." *Johnson v. Maki & Associates, Inc.*, 289 Ill. App. 3d 1023, 1028 (1997), citing *Gavery v. McMahon & Elliott*, 283 Ill. App. 3d 484, 489 (1996).

■ Focusing on the lack of a detriment to the employee, the trial court found no valid consideration. Based upon our view of the discussion in *Hermes*, the trial court was correct in concluding that the option contract is merely an offer which may be withdrawn at any time prior to a tender of compliance. DiLorenzo could have exercised the option the moment it was purportedly made, then immediately quit, thereby giving nothing to the employer. Though the exercise of the option would require the transfer of money for the stock, the option itself carries with it no detriment to DiLorenzo. Therefore, there was no consideration for the option.

■ Because of the posture of this case, we now turn to the question of whether the minutes of the June 8, 1987, meeting are conclusive of anything. Valve & Primer claims the corporate minutes were a fabrication by DiLorenzo or Christofidis or both. DiLorenzo claims they are authentic. We find that no factual issue regarding the authenticity of the corporate minutes is material and, therefore, could not have operated to preclude the entry of summary judgment in the case below because of our finding of lack of consideration for the option itself.

We next address DiLorenzo's claim that he is entitled to the value of the shares of stock based upon the theory of promissory estoppel. DiLorenzo argues that the trial court misapplied the law in finding that there was insufficient reliance to support a claim for promissory estoppel. He claims that, once the trial court decided there was insufficient consideration to support the option contract, promissory estoppel should have been applied by the court to enforce the agreement as a matter of equity. DiLorenzo argues that he detrimentally relied upon Valve & Primer's promise in that he worked at Valve & Primer for an additional period in excess of nine years in reliance on the stock option agreement. DiLorenzo claims that he relied on the stock option as part of his overall, long-term compensation package. He also argues that Valve & Primer received a benefit from DiLorenzo's continued employment, such that it should not be allowed to renege on the promise made to DiLorenzo.

Valve & Primer responds that the trial court was correct in finding insufficient reliance to support the promissory estoppel claim. Valve & Primer argues that DiLorenzo could not satisfy the detrimental reliance prong of the promissory estoppel elements. Though

DiLorenzo claimed he did not act upon offers of employment he claims were made by other companies during the course of his employment with Valve & Primer, he presented to the trial court nothing but his own testimony in support of his claim. Valve & Primer argues that, since DiLorenzo essentially is claiming his stock option vested immediately, he cannot contend that he detrimentally relied upon the purported agreement in the corporate minutes by turning down those other opportunities. Thus, Valve & Primer contends, the trial court properly found no detrimental reliance sufficient to support a promissory estoppel claim. For purposes of promissory estoppel, if DiLorenzo's allegations are taken as true, and the purported option vested immediately, it required nothing of him in order to be exercised other than the payment of $250 per share.

■ "Promissory estoppel arises when (1) an unambiguous promise was made, (2) the [party] relied on the promise, (3) the [party's] reliance on the promise was reasonable, and (4) the [party] suffered a detriment." *People v. Fako*, 312 Ill. App. 3d 313, 318 (2000), citing *People v. Raymond*, 202 Ill. App. 3d 704, 708 (1990); *Pickus Construction & Equipment v. American Overhead Door*, 326 Ill. App. 3d 518, 523 (2001); *Pokora v. Warehouse Direct, Inc.*, 322 Ill. App. 3d 870, 879 (2001). Whether detrimental reliance has occurred is determined according to the specific facts of each case. *Parkside Senior Services, L.L.C. v. National Development & Consultants, Ltd.*, 303 Ill. App. 3d 1022, 1026 (1999), citing *Home Electronic Co. v. Hall & Underdown Heating & Air Conditioning Co.*, 86 N.C. App. 540, 544 (1987)

■ While we would accept that, under certain circumstances, it may be possible for a relinquishment of a job offer to constitute consideration sufficient to support a contract, this is not such a case. There is nothing in the language of the corporate minutes or any other source to be found in this record to suggest that Valve & Primer conditioned the alleged stock option on DiLorenzo's promise to remain in his employment. While the corporate minutes say the alleged grant of the stock option was intended to "retain and reward," it contains no mechanism making the retention mandatory. Since the corporate minutes lack a mandatory obligation on which DiLorenzo could have reasonably detrimentally relied, and he could have elected to buy the shares of stock immediately, DiLorenzo's decision to remain on the job for the additional period of over nine years must be viewed as a voluntary act. Under those circumstances, promissory estoppel would not apply. It was, therefore, not an abuse of discretion to grant Valve & Primer's motion for summary judgment on that issue.

## CONCLUSION

In light of the foregoing, the decision of the trial court is affirmed.

Affirmed.

CAMPBELL, P.J. and QUINN, J., concur.