**Brad R. JOHNSON, Plaintiff–Appellant,**

v.

**SALLIE MAE SERVICING CORP.,
et al.   Defendants–Appellees.**

No. 03–3491.

United States Court of Appeals,
Seventh Circuit.

Submitted May 25, 2004.[*]

Decided May 26, 2004.

Rehearing Denied June 22, 2004.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Brad R. Johnson, Kankakee, IL, for Plaintiff–Appellant.

Mark E. Shure, Keating & Shure, Chicago, IL, for Defendants–Appellees.

Before BAUER, EASTERBROOK, and WILLIAMS, Circuit Judges.

## ORDER

After Sallie Mae Servicing Corporation declared several of Brad Johnson's federal student loans in default, he sued Sallie Mae and two of the loan guarantors, Oregon Student Assistance Commission and the Texas Guaranteed Student Loan Corporation. Johnson's eleven-count complaint accuses Sallie Mae and the guarantors of violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, and accuses Sallie Mae individually of violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692o, and committing a number of state-law torts, including intentional infliction of emotional distress, breach of contract, and defamation. Johnson demanded more than $10 million in damages. The district court granted the defendants' motion for summary judgment, and Johnson appeals. We affirm.

Johnson's dispute with Sallie Mae turns on an alleged agreement he reached with Sallie Mae in September 1997 regarding his monthly loan payments. Johnson claims that a Sallie Mae employee informed him that if he paid the $880 arrearage on his account he could thereafter pay $232 monthly until April 2001, when the monthly payment would increase to $348. Johnson paid the $880 and then began making $232 monthly payments. However, in October 1998 Sallie Mae realized that the revised payment plan, without more, would not extinguish the loans within the 10–year period required by the governing federal regulations, and so it increased the amount due monthly. After Johnson protested, Sallie Mae recalculated the lowest possible monthly payment that it believed would allow Johnson to repay the loans in a timely fashion—$345.44. But Johnson, relying on what he characterized as a "contract" guaranteeing him that he could pay $232 monthly until April 2001, steadfastly refused to pay the increased amount. This led Sallie Mae to declare the loans in default and report the default to the guarantors, who in turn reported

the default to national credit reporting bureaus.

Believing Sallie Mae's attempts to collect the higher monthly payment to be unlawful, Johnson, a law school graduate, initiated this *pro se* law suit. His theory is that by mailing him monthly statements showing the recalculated payment and calling about the increased amount due, Sallie Mae committed predicate acts of mail and wire fraud triggering civil RICO liability. His third amended complaint also claimed that Sallie Mae formed an enterprise with the guarantors so that the three together could use "schemes and artifices" to commit mail and wire fraud, extortion, and embezzlement. He further alleged that Sallie Mae committed multiple violations of the FDCPA in the course of trying to collect the higher monthly amount. Finally, Johnson alleged that by raising the monthly payment amount Sallie Mae breached the "contract" allowing him to pay $232 monthly, committed libel and slander by declaring him in default, and intentionally inflicted emotional distress upon him by "harassing" him for the higher monthly payment.

In granting summary judgment to the defendants on all counts, the district court reasoned that Johnson could not prove RICO violations because none of the defendants' attempts to collect the loan balances Johnson admittedly owed constituted predicate criminal acts, nor did Johnson have evidence of a pattern of racketeering activity as required for RICO liability. The court further concluded that Sallie Mae was not a "debt collector" subject to liability under the FDCPA, and that the state law claims were both patently frivolous and preempted by the federal regulations governing the administration of student loans. The district court then denied Johnson's motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e).

■ On appeal Johnson argues that his RICO claims should have survived summary judgment because he submitted evidence that Sallie Mae, and later the guarantors, repeatedly mailed him monthly statements and called him demanding a higher payment than he believes was owed, thus engaging in a pattern of mail and wire fraud and extortion. To succeed on his RICO claim, Johnson must establish a pattern of racketeering activity involving at least two predicate criminal acts. 18 U.S.C. § 1961(1), (6); *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 232, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Both mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343 may serve as predicate acts for a RICO violation. *See* 18 U.S.C. § 1961(1)(B); *McDonald v. Schencker*, 18 F.3d 491, 494 (7th Cir.1994). However, Johnson fails to explain in his brief what summary judgment evidence would establish that Sallie Mae or the guarantors committed either. Specifically, both mail and wire fraud require the making of a materially false statement or the concealment of a material fact. *See Neder v. United States*, 527 U.S. 1, 25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Johnson has not shown that Sallie Mae or the guarantors either lied or concealed material facts from him in an attempt to defraud him of his money—money he admittedly owed. *See Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 299 (7th Cir.2004) (RICO claim hinging on mail fraud frivolous where defendant's mailing contained no false representations intended to defraud plaintiff of his money). Likewise, although extortion under 18 U.S.C. § 1951 may qualify as a predicate act, *see* 18 U.S.C. § 1961(1)(B), Johnson's claim that Sallie Mae and the guarantors sent him "threatening letters" demanding

payment falls far short of establishing that they induced payment using "actual or threatened force, violence, or fear" as required by § 1951.

■ Likewise, Johnson cannot establish that Sallie Mae is a "debt collector" subject to liability under the FDCPA. The FDCPA exempts attempts to collect debts that were not in default when obtained. 15 U.S.C. § 1692a(6)(F)(iii); *Bailey v. Security Nat'l Servicing Corp.*, 154 F.3d 384, 386 (7th Cir.1998). It is undisputed that Johnson's loans were not in default when Sallie Mae acquired them. Relying on *Bailey,* Johnson makes the confusing claim that because Sallie Mae itself declared his loans in default after he refused to pay the recalculated monthly payment, Sallie Mae should be "viewed as" collecting on a debt in default when obtained. But *Bailey,* which dealt with whether a corporation that acquired a defaulted loan subject to a superseding forbearance agreement was a debt collector, does nothing for Johnson; it is clear from the undisputed facts that his loan was simply not in default when Sallie Mae acquired it, and his claim to the contrary is frivolous.

■ That leaves Johnson's state-law claims, which the district court rather cursorily concluded were preempted by 34 C.F.R. § 682.200 *et seq.,* the Department of Education regulations governing student loans under the Federal Family Education Loan Program. Courts have recognized that the Higher Education Act of 1965, 20 U.S.C. § 1001 *et seq.,* of which the Federal Family Education Loan Program is a part, may preempt state-law claims when there is an actual conflict between the two. *See, e.g., Armstrong v. Accrediting Council for Continuing Educ. & Training, Inc.,* 168 F.3d 1362, 1369 (D.C.Cir.1999). However, the district court did not explain how Johnson's state-law claims are in direct conflict with the

HEA; rather, the court apparently assumed that the federal regulations themselves would necessarily preempt any state-law claims arising from a dispute about a federal student loan. This is a big assumption, especially given the basic presumption against federal preemption of state law. *See Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981).

■ We need not linger on the issue, though, because, preemption aside, we agree with the district court that the claims are frivolous. Although Johnson persists in characterizing his agreement to make $232 monthly payments as a "contract" that Sallie Mae breached, he adduced no evidence of consideration to support such a "contract." He maintains that Sallie Mae promised to reduce his monthly payment to $232 in exchange for his $880 payment, but nowhere disputes that this amount simply brought his overdue account up to date, thus satisfying his preexisting obligation to make payment on the loans. *See, e.g., DiLorenzo v. Valve & Primer Corp.,* 347 Ill.App.3d 194, 283 Ill. Dec. 68, 807 N.E.2d 673, 679 (Ill.App.2004) (no consideration when party does something he is already obligated to do). The remainder of his state-law claims are even more frivolous. For instance, Johnson provided no evidence that would convince a factfinder that by telephoning him and sending letters seeking payment Sallie Mae engaged in the kind of "truly extreme and outrageous" conduct required to warrant relief for intentional infliction of emotional distress. *See Feltmeier v. Feltmeier,* 207 Ill.2d 263, 278 Ill.Dec. 228, 798 N.E.2d 75, 69, 80–81 (2003) (internal quotations omitted).

Finally, Johnson takes issue with the district court's decision to deny his "renewed motion to compel discovery," in which he sought more detailed answers to

certain interrogatories. The district court denied the motion because Johnson had waived the issue by failing to object to the magistrate's denial of his original motion to compel. Instead of calling the district court's conclusion into question, Johnson rehashes the reasons he believes the defendants failed to satisfy their discovery obligations, but his contentions are unavailing since they do not address the grounds on which the district court acted. *See Anderson v. Hardman,* 241 F.3d 544, 545 (7th Cir.2001).

AFFIRMED.