**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 230004-U

Order filed December 21, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| CINDY VANDERPLOW, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-23-0004 |
| | ) | Circuit No. 20-SC-2102 |
| | ) | |
| STEVEN MILLER, | ) | Honorable |
| | ) | Robert E. Douglas, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Hettel and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  We affirm the trial court's section 2-619(a)(9) dismissal of the plaintiff's claim for breach of contract.  Affirmed.

¶ 2    Pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2020)), the trial court dismissed plaintiff's, Cindy Vanderplow's, breach of contract claim against defendant, Steven Miller.  The court determined that Vanderplow was judicially estopped from basing a breach of contract claim on an alleged oral agreement when, in small claims court and in a subsequently ordered non-binding arbitration proceeding, she based

her breach of contract claim on a written contract with different terms. Vanderplow appeals. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                 A. Procedural History

¶ 5        This case began in small claims court, when, on April 29, 2020, Vanderplow, a self-represented litigant, filed a three-count complaint seeking a total of $9012 in damages. Counts I and III concerned Miller's use of Vanderplow's credit card and are not at issue in this case. Count II, which is the first iteration of the breach of contract claim that is at issue in this case, provided in total: "Defendant built a non-compliant deck (per Village of Roselle requirements), for 9 months defendant has refused to make necessary repairs to bring deck in compliance with Village of Roselle, $4800 due from defendant to bring deck compliant (plaintiff's exhibit 2A-2G)." Exhibits 2A-2G consisted of pictures of the allegedly non-compliant deck, a sample blue print of a deck plan, and permit instructions.

¶ 6        The small claims court ordered the parties to participate in non-binding arbitration. Pursuant to Illinois Supreme Court Rule 90(c) (eff. July 1, 2017), Vanderplow submitted a packet of documentary evidence to the arbitration panel. The instant record does not contain the 90(c) packet nor transcripts of the arbitration hearing, but both parties agree that the 90(c) packet included a July 6, 2019, written contract to build a deck and that Vanderplow testified regarding the written contract at the hearing. On March 23, 2021, the arbitration panel found in favor of Vanderplow, awarding her $9074 in damages. The award did not specify on which of the three counts Vanderplow prevailed and which portion of the damages corresponded with which count. On April 21, 2021, Miller, who was represented by the same counsel throughout the proceedings below and on appeal, rejected the non-binding arbitration award.

¶ 7        On April 28, 2021, with leave of the small claims court, Vanderplow filed a first amended complaint. As to Count II, she alleged that inflation had driven the cost to repair the deck from $4800 to $12,100.  Count II provided in total: "Defendant built a non-compliant deck (per Village of Roselle requirements), for 9 months defendant has refuse[d] to make necessary repairs to bring deck in compliance with Village of Roselle, $12,000 (new cost) due from defendant to bring deck compliant (plaintiff's exhibit 2A-2G)."

¶ 8        On May 4, 2022, the small claims court granted Miller's motion to transfer the case to the law division, given that Vanderplow was now seeking more than $10,000 in damages.

¶ 9        On July 6, 2022, Miller moved to dismiss Vanderplow's first amended complaint, arguing as to Count II that she failed to state a cause of action.  See 735 ILCS 5/2-615 (West 2020).  Miller also argued that the complaint failed to comply with section 2-606 of the Code (735 ILCS 5/2-606 (West 2020)), which provides that, when a claim is based on a written instrument, the written instrument must be attached to the complaint.  Miller noted that Vanderplow failed to attach any of the exhibits referenced in the complaint.  The trial court granted the motion without prejudice.

¶ 10       On August 10, 2022, Vanderplow filed a second amended complaint.  In Count II, for the first time, Vanderplow expressly alleged that, in early July, she and Miller entered into an *oral* agreement to construct a deck and that the cost to repair the deck was not $4800 nor $12,100 but $8575.

¶ 11       On August 11, 2022, Miller again moved to dismiss Count II pursuant to section 2-615 of the Code.  He argued: "Plaintiff failed to allege sufficient factual allegations for consideration, [and] Plaintiff alleged an oral contract but failed to provide sufficiently definite terms [so as to render it enforceable] and failed to allege the plaintiff's performance of all contractual conditions

3

required of [her]." See *National Underground Construction Company, Inc. v. E.A. Cox Company*, 216 Ill. App. 3d 130, 136 (1991). The trial court granted the motion without prejudice.

¶ 12                                    B. The Operative, Third Amended Complaint

¶ 13        On August 30, 2022, Vanderplow filed the operative, third amended complaint. As to Count II, she alleged, "Defendant breached an oral contract to install a residential deck on plaintiff's home to Village of Roselle building code." Specifically, Vanderplow pled that, in early July 2019, the parties entered into an oral contract to build a deck at Vanderplow's primary residence in Roselle "in exchange for money." Vanderplow would "pay for all deck materials and labor" and Miller would "build a deck to the building code specifications as required by the Village of Roselle." On July 8, 2019, Miller began work on the project. The design was based on conversations and text messages sent beginning in March 2019. On July 9, 2019, Miller texted Vanderplow a photograph showing that the old deck had been removed and that he was ready to install the new deck. On July 14, 2019, Vanderplow and Miller again exchanged text messages. Miller wrote that "Peter" would not be available to work on the deck in the near future. Vanderplow asked whether she should just hire someone else to complete the deck; she did not want the deck to sit in its current condition for two weeks. Miller said "ok" and then asked what had changed, as he had already informed Vanderplow of Peter's upcoming trip. Vanderplow answered that Miller had said he could work on Monday (presumably despite Peter's absence). Miller wrote that he could "mount the post bases which [he] never said [he] wouldn't do." On July 22, 2019, Vanderplow "received a Stop Work Order from the Village of Roselle," and, a few days later, Vanderplow "obtain[ed] and pa[id] for a permit for [Miller] to complete work on the deck as verbally agreed[.]" On July 25, 2019, Vanderplow withdrew $2000 cash, which she gave to Miller as partial payment for the project. On August 14, 2019, Vanderplow withdrew another

$4400 cash, which she gave to Miller as final and complete payment for the project. In support of her allegations, Vanderplow attached July 25, 2019, and August 14, 2019, cash withdrawal receipts, as well as the image of an August 14, 2019, text message from Miller to Vanderplow asking for money for the deck ("Can u bring money 4 deck 2day pls").

¶ 14    In August 2019, Miller told Vanderplow that the deck was complete, but, in late August 2019, Miller informed Vanderplow that the stair depth did not comply with village code. Between August 2019 and March 2020, Miller "verbally stated numerous times" that he would rectify his mistakes and bring the deck into compliance with the village code. Vanderplow "made multiple attempts to have [Miller] rectify the deck issues, and/or discuss potential solutions to no [a]vail."

¶ 15    On May 4, 2020, the Village of Roselle inspected the deck and found the following code violations: (1) 8-inch, as opposed to 12-inch, piers; (2) the riser on the top of the stairs was too high; (3) non-compliant handrail; (4) non-compliant pad behind the stairs; (5) deck boards on stairs not properly secured; (6) two steps of differing heights; and (7) several warped deck boards.

¶ 16    Between May 12, 2020, and May 27, 2020, Vanderplow received bids to bring the deck into compliance, with the "original bid" being for $4800. That bid has since expired, and the new bid, received July 31, 2022, was for $8575.

¶ 17    Vanderplow alleged that the July and August 2019 conversations show the terms of the oral contract formed between herself and Miller. Vanderplow alleged that she performed on the contract by "obtaining a permit, buying materials, and making payments to [Miller]." She alleged that Miller breached the agreement in late August 2019, when he informed her that the stair depth did not comply with the village code. Vanderplow added: "Plaintiff made a couple of requests to [Miller] to go to mediation with no response."

¶ 18    C. Miller's Section 2-619.1 Motion to Dismiss

5

¶ 19        On October 3, 2022, Miller filed a section 2-619.1 combined motion to dismiss the third amended complaint. 735 ILCS 5/2-619.1 (West 2020). As to section 2-615, Miller again argued that Vanderplow failed to plead a cause of action for breach of an oral contract, because the complaint did not set forth sufficiently definite terms, particularly as to consideration, nor did it adequately establish plaintiff's performance of those terms.

¶ 20        As to section 2-619, Miller argued that Vanderplow's claim for breach of an oral contract was affirmatively defeated by the doctrine of judicial estoppel. The doctrine of judicial estoppel aims to protect the integrity of the judicial process by estopping a party from deliberately taking a certain position in one legal proceeding, benefiting from that position, and then taking a contradictory position in a subsequent proceeding. *Seymour v. Collins*, 2015 IL 118432, ¶ 36. Specifically, Miller asserted that, during arbitration in conjunction with the small claims action, Vanderplow had "alleg[ed], testi[fied], and [presented] evidence" that a written contract with different terms controlled.

¶ 21                           i. July 6, 2019, Written Contract

¶ 22        Miller attached the written contract, dated July 6, 2019, which provided as follows. Miller would remove existing deck and debris, dig new foundations piers, pour concrete for piers, build deck frame, and install deck and railings. Miller would furnish labor and supplies. Miller would "comply with all applicable laws, ordinances, rules, regulations, and orders of public authorities for the safety of persons and property." Vanderplow would obtain permits. Vanderplow could request reasonable changes, but any changes must be in writing and signed by both parties. Changes may extend the remodeling schedule and result in additional charges. The remodeling schedule set forth a start date of July 9, 2019; a substantial completion date of July 15, 2019; and the full completion date of July 22, 2019. Events beyond the contractor's control, such as the

6

availability of necessary supplies or labor issues, shall extend the remodeling schedule. The payment schedule required Vanderplow to pay $3000 upon execution of the contract, $2000 upon substantial completion of the project (defined as 75% complete), and $5500 upon full completion, for a total of $10,500. The $10,500 total represented $3500 in supplies and $7000 in labor.

¶ 23    Additionally, the contract contained entire-agreement and dispute-resolution provisions:

"9. Entire Agreement. This document reflects the entire agreement between the Parties and reflects a complete understanding of the Parties with respect to the subject matter. *This Contract supersedes all prior written and oral representations. The Contract may not be amended, altered or supplemented except in writing* signed by both the Contractor and the Client.

10. Dispute Resolution and Legal Fees. In the event of a dispute arising out of this Contract that cannot be resolved by mutual agreement, *the Parties agree to engage in mediation*. If the matter cannot be resolved through mediation, and legal action ensues, the successful party will be entitled to its legal fees, including, but not limited to its attorneys' fees." (Emphases added.)

The contract appears to be signed by each party, and each signature is in a different style.

¶ 24    ii. The December 15, 2021, Email

¶ 25    Miller also attached an email from Vanderplow to Miller's attorney, which Miller argues demonstrates Vanderplow's recognition of the written contract. That email, dated December 15, 2021, provides:

"I am reaching out pertaining to our upcoming trial ***. Back in March during the Arbitration Hearing, you stated that the [hearing officer's] handling the arbitration had no jurisdiction over the contract portion of the small claims suit, due to the fact that no

mediation (per the deck contract) was completed. I stated that I made several attempts to get your client to mediation with no success on his part.

Since March, I have not heard from you regarding your client's intentions on attempting mediation prior to the trial. Discuss with your client and advise me of your decision."

¶ 26                    D. Vanderplow's Response to the Motion to Dismiss

¶ 27        On November 2, 2022, Vanderplow responded to the motion to dismiss. As to section 2-615, Vanderplow argued, *inter alia*, that she pled the elements necessary to prove a valid and enforceable oral contract, offer, acceptance, consideration, identifiable material terms, and mutual assent and an intent to be bound. See *DiLorenzo v. Valve & Primer Corp.*, 347 Ill. App. 3d 194, 199-200 (2004).

¶ 28        As to section 2-619, Vanderplow did not expressly address Miller's judicial estoppel argument. She did, however, generally deny that she ever took the position that the written contract was valid. She asserted that she had submitted the written contract to the arbitration panel to show that it was not a valid contract. She explained:

"During Arbitration[,] Plaintiff submitted a version of Defendant's standard contract. Plaintiff's Exhibit C. Plaintiff also submitted an email from Defendant to Plaintiff of his contract in which he wanted Plaintiff to fill out with information he provided to her verbally. Plaintiff's Exhibit D. Plaintiff also provided an email from Plaintiff to Defendant which states 'Defendant gave Plaintiff verbal authorization to sign Defendant's name to contract.' Plaintiff's Exhibit E. ***.

* * *

8

Plaintiff did submit these documents during the arbitration hearing with the intent to show the invalidity of the written instrument, for fear Defendant would try to enter it as evidence for the wrong reasons."

¶ 29　　　Vanderplow's Exhibit C is the same written contract that Miller attached to his motion to dismiss. Vanderplow's Exhibit D is a paper printout of an email from Miller to Vanderplow, dated July 12, 2019, reading: "I am sharing 'remodeling_contractjulieholmbeck.docx' with you." Handwriting on the paper printout of the email provides: "Email from Defendant to Plaintiff—per verbal agreement between Plaintiff and Defendant—Plaintiff was to use Defendant's template to create contract for deck job between Plaintiff and Defendant." Vanderplow's Exhibit E is a paper printout of an email from Vanderplow to Miller, dated July 24, 2019, containing only a "pdf" attachment titled "contract." Handwriting on the printout of the email provides: "Email of from Plaintiff to Defendant of contract for deck—Defendant gave Plaintiff verbal authorization to sign Defendant's name to contract."

¶ 30　　　Vanderplow further argued that the written contract was not valid, stressing that "the terms within the alleged written contract do not correspond with the performance by either party." Specifically, neither party adhered to the payment amount, payment schedule, or performance schedule set forth in the written contract. Vanderplow argued in the alternative that, "if the cour[t] believe[s] *** that the written contract governs [the] agreement between the parties, the Defendant is still in breach of said written contract. The terms, conditions, and dollar amount in the alleged [written] contract do not match the provided evidence or performance by both parties as previously discussed."

¶ 31　　　　　　　　　　　　E. Motion to Dismiss Hearing

¶ 32            On December 8, 2022, the circuit court conducted a hearing on the motion to dismiss. The parties each expressed a willingness to stand on the pleadings, but the court wished to question Vanderplow concerning the judicial estoppel issue:

> "THE COURT: Okay. Well, my question to you is—[you] originally indicated that there was a written contract. Now you're backing off of that. How do you back off of that when you attached a written contract *** as part of your arbitration hearing?
>
> MS. VANDERPLOW: When it was submitted to the arbitration hearing, your Honor, it was submitted to show the arbitrators that it was an invalid contract, and I supplied enough information and evidence during the arbitration to show that there was an oral, and the fact that, you know, [Miller] never even signed a contract, you know, that it was all, you know strange as it may seem, after I prepared and provided the written contract at his request, he told me to sign his name. We were friends, and this was to be a formality only for his records. ***.
>
>                                               * * *
>
> During the arbitration that was submitted, again, just to show the fact that it was invalid, that everything that was done with this deck was not done anywhere near to what that contract specified. I purchased the material. You know, all that. Nothing that was in there, dollar amount or anything, time frame was ever followed. I was told that this was just a formality. I was stupid and trusted a friend. During—or when [Miller] presented *** his motion to dismiss, he accused me of fraud and stated that I said under oath that I signed it and [Miller] signed it. That was not true, and I provided that evidence in my response. You know, never once from the time of the arbitration until this motion to

dismiss on the third amended complaint did they ever say that there was a written contract until he tried submitting it as partial evidence in his motion to dismiss.

MR. USHAROVICH: Judge, that—with that, we've always argued that the contract required mediation. She even sent an email saying that we brought up the mediation, so we've never disagreed with—you know, after all of this arbitration, she even brought up an email asking about mediation. If the contract was invalid, why ask us about mediation, so

MS. VANDERPLOW: I responded—

MR. USHAROVICH: [Vanderplow's] story is just wholly unbelievable, Judge.

* * *

THE COURT: *** the Court finds, Ms. Vanderplow, that *** your argument that you submitted the written contract to prove a negative, which is I gave [the arbitrator] the written contract to show there was no written contract, just doesn't fly with the Court.

And the fact that you did introduce the written contract in arbitration, in the Court's opinion, amounts to an admission on your part that there was a written contract; and, I understand *** that you have an argument to the contrary, but the Court did not accept that argument, so I want to make my reasoning clear on the record."

The circuit court dismissed count II, breach of an oral contract, with prejudice. As counts I and III remained pending, the court entered a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. March 8, 2016) that there was no just reason for delaying an appeal of the dismissal.

¶ 33                                    II. ANALYSIS

¶ 34        Vanderplow argues that the circuit court erred in dismissing count II, breach of an oral contract. Though not expressly stated, it is apparent from the record that the trial court agreed with

11

Miller's section 2-619(a)(9) argument that Vanderplow was judicially estopped from arguing that the terms of an oral contract controlled, where she had previously based her arbitration claim on a written contract with different terms. Vanderplow argues judicial estoppel was inapplicable in that she never based her claim on breach of a written contract. For the reasons that follow, we affirm the trial court.

¶ 35 Under section 2-619(a)(9), the moving party admits the legal sufficiency of the complaint but asserts an affirmative defense or "other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2020); *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). An affirmative matter in the context of a section 2-619(a)(9) motion is something in the nature of a defense that negates the cause of action completely. *Id*. at 367. A section 2-619(a)(9) motion to dismiss provides a mechanism by which issues of law or easily proved issues of fact may be determined at the outset of the case. *Sjogren v. Maybrooks, Inc.*, 214 Ill. App. 3d 888, 891 (1991). When the trial court rules on a section 2-619(a)(9) motion to dismiss, it must consider the pleadings and supporting documents in a light most favorable to the non-movant. *Van Meter*, 207 Ill. App. 3d 367-68. "If, upon the hearing of the motion, the opposite party presents affidavits or other proof denying the facts alleged or establishing facts obviating the grounds of defect, the court may hear and determine the same and may grant or deny the motion. If a material and genuine disputed question of fact is raised the court may decide the motion upon the affidavits and evidence offered by the parties." 735 ILCS 5/2-619(c) (West 2020). Thus, the court may, in its discretion, decide easily proved questions of fact upon the hearing of a section 2-619(a)(9) motion to dismiss. See *Sjogren*, 214 Ill. App. 3d at 891. However, the court should deny the motion if it cannot determine with reasonable certainty that the defense exists. *Id*.

¶ 36    Ordinarily, a section 2-619(a)(9) dismissal presents a question of law subject to *de novo* review. *Offord v. Fitness International, LLC*, 2015 IL App (1st) 150879, ¶ 15. When the trial court grants the motion following a hearing at which it resolved a question of fact, however, we must review not only a question of law but also of fact, the latter of which is subject to the manifest weight standard of review. *Id.*

¶ 37    Judicial estoppel is an affirmative matter avoiding the legal effect of or defeating a claim, and it is properly raised in a section 2-619(a)(9) motion to dismiss. See *Johnson v. Fuller Family Holdings, LLC*, 2017 IL App (1st) 162130, ¶¶ 32-33. Judicial estoppel is an equitable doctrine, aimed at protecting the judicial process by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." (Internal quotes omitted.) *Id.* ¶ 33 (quoting *Seymour*, 2015 IL 118432, ¶ 36). The five "generally required" elements of judicial estoppel are: (1) the party to be estopped has taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) succeeded in the first proceeding and received some benefit. *Seymour*, 2015 IL 118432, ¶ 37. If the five prerequisites are present, the court then exercises its discretion in deciding whether to apply judicial estoppel. *Johnson*, 2017 IL App (1st) 162130, ¶ 35. In exercising this discretion, a "critical factor" is whether the party to be estopped intended to deceive the court or whether inadvertence or mistake may account for previous positions taken and facts asserted. *Id.*

¶ 38    Prior to 2015, the trial court's application of judicial estoppel was reviewed for an abuse of discretion, regardless of the procedural context in which the trial court applied the doctrine. *Id.* ¶ 36. Then, in *Seymour*, 2015 IL 118432, ¶ 49, the supreme court determined that the procedural context in which the trial court applied the doctrine mattered. It held: "where the exercise of [a

13

trial court's] discretion results in the termination of the litigation, and that result is brought about via the procedural mechanism of a motion for summary judgment, it follows, as well, that we review that ruling *de novo*." *Id.*

¶ 39 Here the trial court resolved a straightforward question of fact at the hearing on the motion to dismiss pursuant to section 2-619(a)(9) on the grounds of judicial estoppel. Specifically, the trial court conducted what was in effect a brief evidentiary hearing aimed at resolving the factual question of whether Vanderplow took the position during arbitration that the terms of the written contract controlled. The parties had provided documentation, which included Vanderplow's exhibit Nos. C, D, and E. The trial court questioned Vanderplow regarding her current position that she had submitted what appeared to be a valid written contract to the arbitration panel to show that there was no written contract, *i.e.*, "to prove a negative." The trial court expressly stated that Vanderplow's explanation "doesn't fly with the [c]ourt" and the court would "not accept" it. In other words, the trial court found Vanderplow not credible. We also infer from the trial court's statements that, as to the judicial estoppel issue, the court did not find Vanderplow's change of position to be inadvertent. We afford deference to these determinations consistent with the proceedings in which they arose. *Seymour*, 2015 IL 118432, ¶ 49; see also *Offord*, 2015 IL (1st) 150879, ¶ 15 (factual finding made following a brief evidentiary hearing on a section 2-619(a)(9) motion to dismiss was reviewed according to the manifest weight standard).

¶ 40 At this juncture, we explain why it matters whether Vanderplow's claim is based on a breach of the written contract or a breach of an oral contract. The principles of contract interpretation apply to discern the terms of a written contract. *Doornbos Heating and Air Conditioning, Inc. v. James D. Schlenker, M.D.*, 403 Ill. App. 3d 468, 488 (2010). Here, the parties do not dispute the written contract's terms, which plainly show an intent to be bound ("[t]his

14

contract is legal and binding"). *Cf. Inland Real Estate Corp. v. Christoph*, 107 Ill. App. 3d 183, 185-86 (1981). The existence of an oral contract, in contrast, necessarily cannot be shown by written words and requires other proof to show sufficiently definite terms to render it enforceable. See *National Underground*, 216 Ill. App. 3d at 136.

¶ 41    The terms of the instant written contract and alleged oral contract differ, including: (1) the cost and payment schedule ($10,500 versus $6400); (2) the person to purchase the materials (Miller versus Vanderplow); and (3) the person to obtain the permit (Vanderplow versus unclear). On the last point, the written contract provides that obtaining a permit was the homeowner's responsibility. However, Vanderplow intimates in her third amended complaint that the stop work order from the Village due to the absence of a permit was Miller's failing. Vanderplow has conceded that she herself did not perform according to the cost and payment schedule set forth in the written contract and, thus, moves forward in her third amended complaint with the allegation that the parties instead formed an oral contract.

¶ 42    In challenging the trial court's application of judicial estoppel, Vanderplow disputes only the first of the five prerequisites—that she has taken two different positions. She does not dispute that, if she had initially based her claim on the terms in the written contract, she should be judicially estopped from later basing her claim on the terms in the alleged oral contract.

¶ 43    The trial court's determination that Vanderplow took the position, during the arbitration proceedings, that the terms in the written contract controlled is not against the manifest weight of the evidence. Although Vanderplow now claims that the written contract was invalid, the December 15, 2021, email demonstrates she herself sought to enforce paragraph 10's mediation provision. In addition, nothing in Vanderplow's exhibit Nos. C, D, and E supports that she submitted the written contract to the arbitrator to show that its terms were invalid. Exhibit C, the

15

signed written contract, appears to be signed by two different individuals each with completely different signature styles. We observe that the written contract is signed July 6, 2019, but Exhibits D and E, purporting to be proof of Miller's instruction to Vanderplow to tailor and sign the written contract, are dated July 12, 2019, and July 24, 2019. Nevertheless, the substance of the handwriting on exhibit Nos. D and E does not support lack of assent to the terms of the written contract. Indeed, Vanderplow's assertion in handwriting on the exhibits that she tailored a form contract to match the terms of the parties' agreement suggests that the written contract *accurately* reflects the parties' agreement.

¶ 44        Vanderplow's oral explanation at the hearing was also contradictory. Vanderplow appeared to argue that the terms set forth in the written contract were not followed (by either party), not that they were invalid. These inconsistencies further support the trial court's decision to reject Vanderplow's explanation and apply the doctrine of judicial estoppel. The trial court properly dismissed count II pursuant to section 2-619(a)(9) on the grounds of judicial estoppel.

¶ 45        The above section 2-619 analysis is dispositive. Therefore, we need not address Vanderplow's arguments that are derivative of that issue, including the import of the written contract's mediation provision. Similarly, we need not reach Vanderplow's section 2-615 arguments, including whether she stated a valid cause of action for breach of an alleged oral contract.

¶ 46                                   III. CONCLUSION

¶ 47        The judgment of the circuit court of Du Page County is affirmed.

¶ 48        Affirmed.

16