# Illinois Official Reports

## Appellate Court

> ### *Johnson v. Fuller Family Holdings, LLC*, 2017 IL App (1st) 162130

| | |
|---|---|
| Appellate Court Caption | GREGORY JOHNSON and NATASHA JOHNSON, Plaintiffs-Appellants, v. FULLER FAMILY HOLDINGS, LLC, a Delaware Limited Liability Company, ABM JANITORIAL SERVICES-MIDWEST, LLC, a Delaware Limited Liability Company, 30 N. LASALLE, L.P., a Delaware Limited Partnership, and TISHMAN SPEYER PROPERTIES, L.P., a Delaware Limited Liability Partnership, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-16-2130 |
| Filed | December 8, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-L-11122; the Hon. William E. Gomolinski, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Peter A. Cantwell, of Cantwell & Cantwell, of Chicago, for appellants.<br><br>Julie A. Tuescher, Matthew A. Eliaser, James A. Ahern, and Daniel J. Basler, of Cassiday Schade LLP, and Melissa A. Murphy Petros and John Stiglich II, of Wilson Elser Moskowitz Edelman & Dicker LLP, both of Chicago, for appellees. |

| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion. |
|---|---|
|  | Presiding Justice Hoffman and Justice Delort concurred in the judgment and opinion. |


**OPINION**

¶ 1    Plaintiffs, Gregory Johnson and Natasha Johnson, appeal from the trial court's order that granted the motion to dismiss brought by defendants, ABM Janitorial Services-Midwest, LLC (ABM), Fuller Family Holdings, LLC (Fuller), 30 N. LaSalle, L.P. (30 N. LaSalle), and Tishman Speyer Properties, L.P. (Tishman) (hereinafter collectively referred to as defendants). The trial court found that due to plaintiffs' failure to disclose their personal injury claim during their bankruptcy proceeding, judicial estoppel barred plaintiffs from bringing the instant lawsuit. Plaintiffs assert that the trial court's decision was in error because their failure to disclose was inadvertent. We find that the record before us does not evince an intent to deceive or mislead by plaintiffs. Therefore, we reverse the decision of the trial court and remand for further proceedings.

¶ 2                                              BACKGROUND

¶ 3    The underlying case here stems from the personal injuries suffered by plaintiff Gregory Johnson as a result of a slip and fall in a stairwell at work. On December 15, 2010, Gregory was working as a security guard for Whelan Security of Illinois, Inc. (Whelan), at 30 North LaSalle Street in Chicago, which required him to patrol the exterior of the building. While on patrol, Gregory fell due to the allegedly negligently-maintained condition of the stairs. As a result of his work-related injury, Gregory filed a workers' compensation claim against Whelan on August 25, 2011, and received benefits.

¶ 4    On December 14, 2012, plaintiffs filed their complaint in the circuit court of Cook County alleging negligence against defendants, specifically that defendants negligently owned, operated, managed, maintained, or controlled the premises. Plaintiffs' complaint was brought by Gregory for his personal injuries and by Gregory's wife, Natasha, for her loss of consortium.

¶ 5    Prior to setting forth the pertinent procedural facts from the circuit court, we find it necessary to address plaintiffs' bankruptcy proceedings. On June 14, 2012, six months prior to filing the instant personal injury lawsuit, plaintiffs jointly filed a petition for chapter 7 bankruptcy (11 U.S.C. § 101 (2006)) in the United States District Court for the Northern District of Illinois and were represented by Peter Francis Geraci Law, LLC, during their bankruptcy proceeding. Plaintiffs' petition included various "schedules" that contained their assets and liabilities. One of the disclosures in Schedule B, which covered personal property, required plaintiffs to describe, "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counter claims of the debtor, and rights to set off claims." In response to this item, plaintiffs listed: "Workers compensation case with Patricia Lannon 312.236.5412." Plaintiffs listed the value of that case as "[u]nknown." Both plaintiffs electronically signed the disclosures under penalty of perjury.

¶ 6    On August 8, 2012, a meeting of the creditors occurred, during which plaintiffs were asked questions regarding their assets and liabilities by the bankruptcy trustee, Mr. Horace Fox. In relevant part, the following exchange occurred between Mr. Fox and Gregory:

"MR. FOX [bankruptcy trustee]: In the last 2 years, has either of you suffered any pers—physical injury that would allow you to sue the person that caused you that damage and make them pay you money?

MR. JOHNSON [plaintiff]: Yes, I have.

MR. FOX: How long ago did that occur?

MR. JOHNSON: Worker's [c]ompensation. It happened in, uh—

MR. FOX: Did you say [w]orkers [c]ompensation?

MR. JOHNSON: Yes.

MR. FOX: Okay.

MR. JOHNSON: December—

MR. FOX: We don't have to have this conversation because you get to keep 100% of any [w]orkers [c]ompensation award.

MR. JOHNSON: Okay.

MR. FOX: Okay. But I appreciate your honesty."

On October 10, 2012, approximately two months prior to the filing of plaintiffs' personal injury lawsuit in circuit court, plaintiffs received a discharge in bankruptcy and their bankruptcy case was closed.

¶ 7    As previously stated, plaintiffs' circuit court complaint was filed on December 14, 2012. Both plaintiffs gave deposition testimony on November 11, 2013. Natasha testified first, with her deposition beginning at 1 p.m. Gregory testified after Natasha, with his deposition beginning at 2:50 p.m., and ending after 8 p.m. During his deposition, Gregory testified that he had filed two lawsuits prior to the instant personal injury case: a personal injury claim related to a 2000 motorcycle accident and a property damage claim related to a 2002 car accident. Gregory also testified that he and his wife had filed for personal bankruptcy. When asked if the instant lawsuit had been disclosed as an asset in the bankruptcy, Gregory responded, "No. It wasn't, no."

¶ 8    Most relevant to the issues raised in this appeal, is the following exchange from Gregory's deposition:

"Q. While you may not have been asked it by the bankruptcy trustee, did you disclose the fact that you had been involved in an accident that could potentially result in a third-party action against other entities during the bankruptcy proceedings?

MR. CANTWELL [plaintiffs' attorney]: Objection. If he disclosed the workmen's comp claim, that certainly is about—There's no other workmen's comp claim he ever made, I don't think. Not that I know of.

Q. [Defendant ABM's attorney:] Do you understand my question?

A. You're asking me if I filed a lawsuit for workers' compensation—

Q. No. What I'm asking is, you testified that you disclosed that you had a workers' comp action—

A. That's right.

Q. —proceeding with respect to this incident. Did you disclose that you might potentially file a lawsuit with respect to something non-workers' compensation resulting from the December 15, 2010, accident regardless of whether you were asked it by the bankruptcy trustee or not?

A. I told him I had no idea. I didn't know if I would do anything because at that time I didn't even have my surgery.[1]

Q. Okay.

A. When I first talked to a—the bankruptcy lawyers, I had no idea that I would even file a lawsuit, period.

Q. But you had been injured as of at least that time, correct?

A. Yes.

Q. And at that point in time that you consulted the—Do you recall when exactly you first retained the law firm of Peter Francis Geraci to represent you in the bankruptcy proceeding?

A. Not offhand because they give you a consultation and they give you—they set up another meeting where you confirm everything and then you go through another process of them showing you all the records of whatever you owe, funds that you want to claim on you bankruptcy and so forth and so on."

¶ 9 On November 13, 2013, two days after plaintiffs' depositions, two of defendants, ABM and Fuller, filed an emergency motion to dismiss pursuant to the doctrines of standing and judicial estoppel.

¶ 10 On December 13, 2013, plaintiffs filed a motion to reopen their bankruptcy case in federal court. The motion asked that their case be reopened so as to allow plaintiffs to amend their bankruptcy schedules to include their personal injury claim that was then pending in circuit court. The motion stated that plaintiffs "believed that they had disclosed the unliquidated contingent claims by listing the [w]orker's [c]ompensation claim on their [s]chedules," and explained that "[n]o claim against any third parties had been filed or was pending in any [c]ourt at the time of [plaintiffs'] filing of their [bankruptcy petition] or during the pendency of the [b]ankruptcy case, and any failure by [plaintiffs] to disclose the potential third party claims was inadvertent and an honest mistake." On December 20, 2013, the bankruptcy court granted[2] plaintiffs' motion to reopen their case and allow the trustee and the court to address the disposition of plaintiffs' circuit court personal injury lawsuit.

---

[1]Earlier in the deposition, Gregory testified that he had surgery on his shoulder in August 2011.

[2]We note that the copy of the bankruptcy court's December 20, 2013, order that is contained in the record states: "The Debtors Motion to Re-Open Bankruptcy Case is granted/denied." Neither "granted" nor "denied" is scratched-out. However, the order subsequently states, *inter alia*, that the debtors are granted leave to amend their schedules to include the contingent claims currently pending before the circuit court and that the matter was set for status on January 7, 2014. The same copy of the order appears in the bankruptcy court's online records but the "docket text" contained in the online record references the order as "granting motion to reopen Chapter 7 [c]ase." It is well settled that "we may take judicial notice of public documents which are included in the records of other courts." *Seymour v. Collins*, 2015 IL 118432, ¶ 6 n.1. Based on the context of the order and the online docket text, it is clear that plaintiffs' motion to reopen was granted.

¶ 11    On March 17, 2014, the circuit court placed plaintiffs' case on the bankruptcy stay calendar.

¶ 12    On July 29, 2014, the parties in the bankruptcy case, including the trustee and plaintiffs' attorney for their personal injury case, appeared before the bankruptcy court. The trustee informed the court that he had filed a no-asset report and that the case was ready to be reclosed. It was then brought to the court's attention that plaintiffs had a pending state court case. The trustee stated that they had not sought to administer that asset other than discussions with defendants' counsel regarding a possible settlement of plaintiffs' personal injury claim, however, "[t]hey were unwilling to offer any kind of settlement that would yield a dividend for the estate after payment of liens, attorney fees and exemptions to the debtors." Additionally, the trustee acknowledged that there was a controversy regarding whether plaintiffs properly disclosed their personal injury claim, and plaintiffs' counsel informed the court that defendants filed a motion to dismiss based on judicial estoppel in the personal injury action. The court responded that judicial estoppel would not apply against the trustee but asked if the trustee intended to nonetheless abandon the claim. The trustee confirmed his intent to abandon, explaining that:

> "Effectively, we are because we anticipate that, first of all, there are certain defenses that the defendants have raised that they would assert. Assuming that the debtors or the trustee as plaintiff could get past there, there's going to be adjudication on the topic that you're discussing with the counsel over whether the trustee abandoned it when the case was first closed."

The court expressed its belief that "[i]t would seem to me they would have no incentive to give an attractive offer to the trustee." The trustee also acknowledged defendants' position that plaintiffs do not have a meritorious case. Plaintiffs' counsel asked that plaintiffs be allowed to file a motion to amend their assets and liabilities schedules *nunc pro tunc* to the date of their original disclosures. The court did not allow plaintiffs' oral motion, stating, "Counsel, I'm really—I'm not incentivized to help—a party who did not reveal a cause of action."

¶ 13    Plaintiffs' circuit court case remained inactive until November 2, 2015, when it was removed from the stay calendar.

¶ 14    On February 16, 2016, defendants filed a renewed joint motion to dismiss based on the doctrines of standing and judicial estoppel. Their motion was brought pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code), which allows a defendant to move for dismissal of an action when "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2014). Their renewed motion was similar to their previously filed motion to dismiss with a few notable exceptions: (1) defendants' renewed motion was not brought as an emergency, (2) defendants' renewed motion cited additional portions of the record that came to light through the reopened bankruptcy proceedings, and (3) defendants' renewed motion addressed the recently decided case of *Seymour v. Collins*, 2015 IL 118432. As to the issue of standing, defendants' motion argued that plaintiffs lacked standing because, although the trustee abandoned plaintiffs' personal injury claim, the claim remained the exclusive property of the trustee. Additionally, defendants contended that the doctrine of judicial estoppel barred plaintiffs' personal injury claim because plaintiffs failed to list it on their bankruptcy disclosures as an unfiled contingent claim.

¶ 15 Plaintiffs filed their response to defendants' motion on March 30, 2016, asserting, in relevant part, that defendants failed to present clear and convincing evidence that plaintiffs should be judicially estopped from proceeding with their claims. Attached to plaintiffs' response were affidavits from both Gregory and Natasha that were substantially similar. Both affidavits contained the attestation that at the time plaintiffs filed their bankruptcy petition, "they had not consulted with any attorneys about filing any third party lawsuit against the [d]efendants in the case at bar, and had no idea if they were going to or could file a lawsuit other than the workers' compensation case in connection with the December 15, 2010 incident." Additionally, plaintiffs' affidavits stated that they "believed that [they] had disclosed all personal injury claims and 'unliquidated contingent claims' on the [b]ankruptcy [s]chedules by disclosing the workers' compensation case."

¶ 16 Defendants filed a reply in support of their motion to dismiss on April 12, 2016.

¶ 17 The circuit court conducted oral argument on defendants' motion to dismiss on May 4, 2016, and issued its memorandum order and opinion on June 30, 2016. The court's order recognized that the law requires a debtor to disclose any conceivable interests, including speculative future interests, and thus determined that plaintiffs did not satisfy their duty under federal law to disclose all claims. On the issue of standing, the court noted that "[p]laintiffs do not identify a single Illinois case standing for the proposition that the abandoned claim reverted back to [p]laintiffs retroactively, as if the bankruptcy had never been filed[, therefore] *** [p]laintiffs did not have standing to file their present claims." The court's order further stated that although it found that plaintiffs lacked standing, it would also address defendants' arguments regarding judicial estoppel.

¶ 18 On the issue of judicial estoppel, the court's order determined that the doctrine applied to bar plaintiffs' action. In determining whether the requirements for judicial estoppel were present, the court noted that even if plaintiffs' error in failing to disclose their personal injury claim was corrected through the reopening of the bankruptcy case, such a correction does not erase plaintiffs' initial position that they did not possess that asset. Significantly, the court stated that "[t]he bankruptcy judge also did not grant [p]laintiffs' motion to amend the bankruptcy schedule *nunc pro tunc*, and there is not support for [p]laintiffs' contention that the trustee's abandonment of the claims retroactively cures [p]laintiffs' initial failure to disclose." The court found that "there is sufficient evidence to convince this court that it is not punishing [p]laintiffs for an innocent mistake." Also, the court distinguished this case from *Seymour*, finding that "[i]n the present case, [p]laintiffs, through their bankruptcy counsel, knew to include Gregory's workers' compensation claim on the bankruptcy schedule. Gregory Johnson also testified that he knew of the claim but did not think he would file it when he was making his bankruptcy disclosures."

¶ 19 The court's order ultimately stated, "Defendants ABM Janitorial Services-Midwest LLC and Fuller Family Holdings, LLC's Joint Motion to Dismiss Pursuant to Doctrines of Standing and Judicial Estoppel is GRANTED, and Plaintiffs' Complaint is DISMISSED WITH PREJUDICE." The order also contained language pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 20 Defendants filed their timely notice of appeal on August 1, 2016.

ANALYSIS

Jurisdiction

Prior to addressing the merits of this appeal, we must first address an issue regarding the proper parties to this appeal and our jurisdiction. We have an independent duty to consider the issue of jurisdiction and dismiss the appeal where our jurisdiction is lacking. *Palmolive Tower Condominiums, LLC v. Simon*, 409 Ill. App. 3d 539, 542 (2011).

The circuit court's June 30, 2016, order contained an introduction that stated:

> "This matter comes for ruling on Defendants ABM Janitorial Services-Midwest LLC and Fuller Family Holdings, LLC's Motion to Dismiss Plaintiffs' Complaint pursuant to 735 ILCS 5/2-619(a)(9) and the doctrines of standing and judicial estoppel."

Similarly, the judgment line of the court's June 30, 2016, order stated:

> "Therefore, based upon the pleadings, briefs, and case law cited above, Defendants ABM Janitorial Services-Midwest LLC and Fuller Family Holdings, LLC's Joint Motion to Dismiss Pursuant to the Doctrines of Standing and Judicial Estoppel is GRANTED, and Plaintiffs' Complaint is DISMISSED WITH PREJUDICE. The court further finds that there is no just reason for delaying either enforcement or appeal of this order pursuant to Rule 304(a)."

Notwithstanding the fact that 30 N. LaSalle and Tishman are not listed as movants in either the introduction or the judgment line of the circuit court's order from which this appeal stems, the response brief in this appeal was filed on behalf of all four defendants. We find this perplexing because the record does not contain any evidence that any defendant ever filed a motion to modify or correct the circuit court's June 30, 2016, order to include all four defendants rather than ABM and Fuller only.

In their statement of jurisdiction, plaintiffs acknowledge that the June 30, 2016, order contains Rule 304(a) language. Later in their brief, plaintiffs also stated that although all four defendants jointly filed the motion to dismiss and all four defendants filed appearances in this appeal, none sought to modify the court's order to reflect that the motion to dismiss was granted as to all defendants. Nonetheless, plaintiffs curiously assert that our jurisdiction exists pursuant to Rules 301 and 303. Ill S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. Jan. 1, 2015). Plaintiffs' brief also points out that "[a] judgment for two of four defendants, with a Rule 304(a) finding entered in the same [o]rder ***, has recognized jurisdictional meaning, which should not be totally disregarded." However, plaintiffs fail to explain this proposition and provide no legal authority to support it.

In defendants' statement of jurisdiction, defendants posit that "[t]he trial court's June 30, 2016 [o]rder inadvertently omitted reference to the movants and, thus, to the dismissed parties, 30 N. LaSalle, L.P. and Tishman Speyer Properties, L.P." Defendants cite two pages of the record as support for this proposition; however, neither page evinces any inadvertence by the court. In fact, the two pages that defendants cite are the first and last pages of the court's June 30, 2016, order, both of which list only ABM and Fuller as movants. Defendants then suggest that the court's Rule 304(a) language was unnecessary "because all [d]efendants moved for dismissal jointly and thus all [d]efendants were dismissed per the trial court's June 30, 2016 [o]rder."

¶ 27    After a thorough review of the record, we find no evidence that any party ever attempted to bring to the circuit court's attention its purported inadvertence in omitting two defendants from its order. "Failure to raise an issue in the trial court generally results in forfeiture of that issue on appeal." *Huang v. Brenson*, 2014 IL App (1st) 123231, ¶ 22. It is clear from the record that both the motion to dismiss and the reply were brought on behalf of all four defendants. Equally clear is the fact that the circuit court, for reasons unknown, believed only ABM and Fuller were the movants. There are two separate occasions in the court's June 30, 2016, order in which the court refers to only ABM and Fuller as the movants. Additionally, as defendants correctly noted in a somewhat ironic manner, there would be no need for Rule 304(a) language if the court's order had disposed of the entire litigation. We find that the court's two references to ABM and Fuller as the only movants, coupled with the court's inclusion of Rule 304(a) language, indicates that the court only intended to enter judgment in favor of two out of four defendants. Because defendants never sought to correct what they deemed an inadvertent mistake by the circuit court, they have forfeited such an argument on appeal. See *id.* As a result, we only have jurisdiction over ABM and Fuller pursuant to Rule 304(a). The case as to 30 N. LaSalle and Tishman remains pending in the circuit court. Thus, any subsequent reference to "defendants" in this order only refers to ABM and Fuller, who are the only defendants over which we have jurisdiction, and thus the only two defendants to which this order applies.

¶ 28                                          Standing

¶ 29    Plaintiffs made two arguments for reversal in their opening appellate brief—the first of which was based on the court's erroneous determination that plaintiffs lacked standing. Defendants' response brief does not disagree with plaintiffs' assertion that they did, in fact, have standing to file their lawsuit and goes so far as to acknowledge that there is "no issue presented for review regarding standing." The circuit court granted defendants' motion to dismiss on the doctrines of both standing and judicial estoppel. The court specifically noted that there was no Illinois authority holding that upon abandonment, a claim reverted back to a bankruptcy debtor, such as plaintiffs, retroactively to the claim's date of filing. However, this court has since issued its decision in *Board of Managers of the 1120 Club Condominium Ass'n v. 1120 Club, LLC*, 2016 IL App (1st) 143849, ¶ 42, wherein it held that "once a claim is assigned back to the debtor by the bankruptcy trustee, standing revests in the debtor, as if the debtor had never lost standing in the first place." Due to the clear holding of *Board of Managers* and defendants' concession that they "do not argue or rely upon lack of standing as a ground for affirmance," we find the trial court erred in determining that plaintiffs lack standing to bring their claim. Once the bankruptcy trustee abandoned their personal injury claim, standing revested in plaintiffs as if they had never lost it in the first place. As a result, we reverse the court's decision granting defendants' motion to dismiss for lack of standing.

¶ 30                                     Judicial Estoppel

¶ 31    Plaintiffs contend that the trial court's dismissal of their complaint on the basis of judicial estoppel was also in error because the requirements for judicial estoppel were not met where the court relied on defendants' distortion of Gregory's testimony and other mischaracterized evidence.

¶ 32 A motion to dismiss brought pursuant to section 2-619 of the Code admits all well-pled allegations in the complaint and reasonable inferences to be drawn from the facts. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 184 (1997). All pleadings and supporting documents must be interpreted in the light most favorable to the nonmoving party. *Id.* at 189.

¶ 33 Judicial estoppel is an equitable doctrine invoked by the court at its discretion. *Seymour*, 2015 IL 118432, ¶ 36. "[T]he uniformly recognized purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from 'deliberately changing positions' according to the exigencies of the moment." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). The doctrine of judicial estoppel applies when a party takes a position, benefits therefrom, and then attempts to take a contrary position in a subsequent proceeding. *Id.* "Courts have warned that the doctrine of judicial estoppel is an extraordinary doctrine that should be applied with caution because it precludes a contradictory position without examining the truth of either statement." (Internal quotation marks omitted.) *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2016 IL App (1st) 142754, ¶ 64.

¶ 34 The framework for ascertaining whether judicial estoppel should bar a claim is a two-step process. *Seymour*, 2015 IL 118432, ¶ 47. First, the trial court must determine whether the party to be estopped has (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) succeeded in the first proceedings and received some benefit. *Id.* Judicial estoppel must be proved by clear and convincing evidence. *Id.* ¶ 39.

¶ 35 Second, if all five factors are found present, the trial court must then exercise its discretion in deciding whether to apply judicial estoppel. *Id.* ¶ 47. Numerous factors may inform a court's decision, such as "the significance or impact of the party's action in the first proceeding, and *** whether there was an intent to deceive or mislead, as opposed to the prior position having been the result of inadvertence or mistake." *Id.* Our supreme court has recognized that whether a party intended to deceive or mislead the court is "a critical factor in the application of judicial estoppel" and has also noted that even if all five prerequisites are present, intent to deceive or mislead is not necessarily present because inadvertence or mistake may account for positions taken and facts asserted. *Id.* ¶¶ 47, 54.

¶ 36 The parties disagree as to the applicable standard of review. Plaintiffs argue that our review should be *de novo*, and defendants assert that we should review for an abuse of discretion. Prior to the *Seymour* decision, "it [was] well settled that the standard of review when a trial court rules on the application of judicial estoppel [was] an 'abuse of discretion' standard regardless of the procedural manner in which it was raised." *Berge v. Mader*, 2011 IL App (1st) 103778, ¶ 9. However, in *Seymour*, the court created a distinction, specifically holding that "where the exercise of [a court's] discretion results in termination of the litigation, and that result is brought about via the procedural mechanism of a motion for summary judgment, it follows, as well, that we review that ruling *de novo*." *Seymour*, 2015 IL 118432, ¶ 49; see also *Barnes v. Lolling*, 2017 IL App (3d) 150157, ¶ 21; *Knott v. Woodstock Farm & Fleet, Inc.*, 2017 IL App (2d) 160329, ¶ 24. In the case before us, defendants brought a section 2-619 motion to dismiss, arguing judicial estoppel barred plaintiffs' personal injury lawsuit. Defendants' motion was granted, resulting in the dismissal with prejudice of plaintiffs' complaint. Although the appeal in *Seymour* stemmed from the trial court's grant of a motion for summary judgment, we believe *de novo* review should also

apply in the context of a section 2-619 motion to dismiss. Like review of a dismissal based on summary judgment, review of a section 2-619 dismissal is *de novo*. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003). Additionally, our supreme court has recognized that "[a section 2-619 dismissal] resembles the grant of summary judgment." *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997). Thus, our review is *de novo*.

¶ 37 Plaintiffs argue that the trial court erred in granting defendants' motion to dismiss because the requirements for judicial estoppel were not met. Plaintiffs point to the authority relied on by the trial court, *i.e.*, *Berge*, 2011 IL App (1st) 103778, and *Dailey v. Smith*, 292 Ill. App. 3d 22 (1997), as outdated in light of the *Seymour* decision. Conversely, defendants assert that all of the requirements were met.[3] Because our review is *de novo*, we perform the same analysis a trial court would perform and we owe no deference to the trial court. *Twyman v. Department of Employment Security*, 2017 IL App (1st) 162367, ¶ 20.

¶ 38 We must first determine whether the five prerequisites of judicial estoppel have been established through clear and convincing evidence: (1) the party to be estopped has taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) succeeded in the first proceedings and received some benefit. *Seymour*, 2015 IL 118432, ¶¶ 39, 47.

¶ 39 As to the first and second prerequisites, it is clear that plaintiffs took two factually inconsistent positions by not disclosing the possibility of their personal injury claim as an asset in their federal bankruptcy proceedings, which essentially amounted to ignoring the claim's existence, and then subsequently bringing this personal injury action in circuit court. The third prerequisite is also clearly satisfied where the first proceeding, which was in federal bankruptcy court, is separate from the instant personal injury lawsuit that was filed in the circuit court of Cook County, a state court. We also find that the fourth prerequisite is satisfied where plaintiffs intended the court to accept their alleged facts as true. Plaintiffs' disclosures in federal court were signed under oath. Additionally, plaintiffs both gave deposition testimony under oath and submitted affidavits in support of their response to defendants' motion to dismiss in their circuit court case. Testimony under oath certainly evinces an intent for the court to accept their assertions as true.

¶ 40 The fifth prerequisite, requiring that plaintiffs succeeded in the first proceeding and received some benefit from it, is also satisfied. Plaintiffs argue that defendants cannot satisfy this requirement because they did not receive any benefit in their bankruptcy case where the trustee ultimately abandoned their personal injury case. Defendants respond that, notwithstanding the trustee's abandonment of the claim, plaintiffs were still able to receive a discharge of their debts without disclosing their possible personal injury claim.

---

[3]We briefly note that defendants contend that plaintiffs "made no argument in their [a]ppellant [b]rief that the trial court erred in finding that the five elements were satisfied, and thus [p]laintiffs have waived this issue." We find such a contention perplexing because plaintiffs' opening brief contains a section titled "THE REQUIREMENTS FOR JUDICIAL ESTOPPEL WERE NOT MET," that consists of over 20 pages of argument related to this issue. Further, plaintiffs specifically argue that certain prerequisites were not met. It is clear from a cursory reading of the arguments in that section that plaintiffs, in fact, asserted that the requirements of judicial estoppel were not met and, therefore, properly asserted this issue on appeal. Thus, we need not address defendants' baseless argument regarding waiver.

¶ 41     We find the recent *Barnes* decision instructive. In *Barnes*, the plaintiff filed a bankruptcy petition and was subsequently involved in an automobile accident. *Barnes*, 2017 IL App (3d) 150157, ¶ 1. The plaintiff did not disclose her accident or possible personal injury claim. *Id.* Her debts were discharged in bankruptcy, and five months later, she filed a personal injury lawsuit based on the injuries suffered in the accident that occurred during the pendency of her bankruptcy case. *Id.* The trial court granted summary judgment on the basis of judicial estoppels and was affirmed on appeal. *Id.* ¶ 2. The court found that the plaintiff "received a benefit from the bankruptcy proceeding by having more than $92,000 of her unsecured debt discharged in bankruptcy without having to increase her payments to her creditors in light of the claim." *Id.* ¶ 22.

¶ 42     Here, plaintiffs succeeded in their bankruptcy proceeding when they received a discharge of their debts. They also received some benefit from that victory, namely avoiding the addition of their personal injury claim to their assets prior to discharge of their debts. We do not find that the trustee's eventual abandonment of their claim negates the benefit plaintiffs received through the initial discharge of their debts without their creditors having access to this claim. Although we appreciate plaintiffs' argument that a debtor-plaintiff's discharge in bankruptcy cannot *per se* satisfy the benefit prerequisite, we have not determined that the benefit here is the discharge alone, but rather the discharge of their original bankruptcy petition having been granted with the trustee, the creditors, and the court being unaware of plaintiffs' personal injury claim. Therefore, we find that even where the trustee eventually abandoned plaintiffs' personal injury claim, the fact that plaintiffs received a discharge of their debts without disclosure of an asset is enough evidence to clearly and convincingly establish a benefit.

¶ 43     Having determined that all five prerequisites are met, we must next exercise our discretion in determining whether to apply the doctrine of judicial estoppel. *Seymour*, 2015 IL 118432, ¶ 47. In exercising our discretion, we consider factors such as "the significance or impact of the party's action in the first proceeding, and *** whether there was an intent to deceive or mislead, as opposed to the prior position having been the result of inadvertence or mistake." *Id.* Primarily, we look to whether plaintiffs had an intent to deceive or mislead, which our supreme court has deemed "a critical factor in the application of judicial estoppel." *Id.* ¶ 54.

¶ 44     Plaintiffs argue that their failure to divulge their possible personal injury claim at the time they filed their bankruptcy disclosures was inadvertent. Plaintiffs supported this contention by attaching affidavits to their response to defendants' motion to dismiss, in which plaintiffs both attested that they did not "purposefully or intentionally omit[ ] any personal injury claims or 'unliquidated contingent claims' from their [b]ankruptcy [s]chedules." Defendants respond that Gregory's deposition testimony establishes that he was aware of his potential personal injury claim at the time the disclosures were filed. Specifically, defendants point to Gregory's deposition when he was asked if he told the trustee that he might potentially file a lawsuit with respect to something not related to workers' compensation, and he answered, "I told him I had no idea. I didn't know if I would do anything because at that time I didn't even have my surgery."

¶ 45     The trial court determined that there was "sufficient evidence to convince this court that it is not punishing [p]laintiffs for an innocent mistake." The court specifically found that "[p]laintiffs, through their bankruptcy counsel, knew to include Gregory's workers'

- 11 -

compensation claim on the bankruptcy schedule." Most significantly, the court observed that, "Gregory *** also testified that he knew of the claim but did not think he would file it when he was making the bankruptcy disclosures." The court further determined that the circumstances under which plaintiffs brought their motion to reopen their bankruptcy case "do not afford [plaintiffs] the benefit of the doubt regarding intent." Plaintiffs argue that the trial court's order misstated Gregory's testimony and was likely due to defendants' distortion of his actual testimony.

¶ 46    Contrary to the trial court, our exercise of discretion results in our finding that the record before us does not contain sufficient evidence to convince this court that plaintiffs intended to deceive or mislead the bankruptcy court when they failed to disclose their unliquidated personal injury claim. Defendants rely on *Berge*, which was decided prior to *Seymour*. We find this problematic for a few reasons. In *Berge*, the court listed the elements of judicial estoppel as: "(1) the two positions must be taken by the same party; (2) the positions must be taken in judicial proceedings; (3) the positions must be given under oath; (4) the party must have successfully maintained the first position, and received some benefit thereby; and (5) the two positions must be totally inconsistent." (Internal quotation marks omitted.) *Berge*, 2011 IL App (1st) 103778, ¶ 13. The *Seymour* court expressly rejected the five elements set forth in *Berge*, holding that "a statement under oath is not required for the doctrine of judicial estoppel to apply." *Seymour*, 2015 IL 118432, ¶ 38. Additionally, *Seymour* created the new requirement that a court must exercise its discretion in determining whether to apply judicial estoppel by examining factors, such as whether there was an intent to deceive. *Id.* ¶ 47. In *Berge*, the court noted that the plaintiff in that case "certainly knew of the undisclosed claim and had motive to conceal it." *Berge*, 2011 IL App (1st) 103778, ¶ 19. However, the court did not state that such a determination was the result of its exercise of discretion, as is now required by *Seymour*. We further find *Berge* lacking in guidance because the court there relied on federal authority wherein the courts did not show much forgiveness when a party failed to disclose assets in a bankruptcy case. *Id.* ¶ 20. In fact, the *Berge* decision went so far as to state "we see no reason to deviate from either *Dailey v. Smith*, 292 Ill. App. 3d at 25, or this long line of federal cases." *Id.* Conversely, in *Seymour*, the court stated, "[w]e are not willing, as appears to be the case in prevailing federal authority given these circumstances [citations], to *presume* that the debtors' failure to disclose was deliberate manipulation." (Emphasis in original.) *Seymour*, 2015 IL 118432, ¶ 62. The *Seymour* court felt so strongly about its deviation from the majority of federal opinion on this issue that it later in its opinion stated, "[w]e are not so ready, as the federal courts appear to be, to penalize, via presumption, the truly inadvertent omissions of good-faith debtors in order to protect the dubious, practical interests of bankruptcy creditors." *Id.* ¶ 63.

¶ 47    We find it pertinent to highlight these distinctions between *Seymour* and *Berge* because we believe these distinctions are great enough such that a court's reliance on *Berge* subsequent to *Seymour* seems erroneous. Defendants argue that *Seymour* did not criticize, limit, question, or overturn *Berge*. We disagree based on the aforementioned discrepancies between the analyses undertaken by the courts. Thus, we decline to consider *Berge* as instructive and decline to rely on any authority prior to *Seymour* that conflicts with the supreme court's holding in that case. Instead, we follow the explicit framework set forth in *Seymour* and subsequently decided cases, such as *Barnes*, in reaching our determination that

- 12 -

the record evidence, when viewed in a light most favorable to the nonmovants, does not establish plaintiffs' intent to mislead or deceive the court below.

¶ 48 Defendants rely on *Barnes* to support their appellate arguments, but we find that case more helpful to plaintiffs. In *Barnes*,[4] the plaintiff filed a bankruptcy petition and was subsequently involved in an automobile accident, which she did not disclose in her bankruptcy case. *Barnes*, 2017 IL App (3d) 150157, ¶ 1. Her debts were discharged in bankruptcy, and five months later, she filed a personal injury lawsuit based on the injuries suffered in the accident that occurred during the pendency of her bankruptcy case. *Id.* On appeal, the court affirmed the trial court's grant of summary judgment on the basis of judicial estoppel. *Id.* ¶ 28. The court found significant the fact that plaintiff waited to attempt to settle her personal injury claim until after receiving her discharge in bankruptcy. *Id.* ¶ 25. The court found her failure to disclose to be intentional because her conduct in waiting to settle until after discharge was the exact behavior that the *Seymour* court recognized as an indication that the plaintiff was trying to avoid creditors. *Id.* In fact, the court found "ample evidence" to suggest that the plaintiff's failure was a deliberate attempt to mislead, including the following pieces of evidence: the plaintiff retained a personal injury attorney 18 days after the accident; the plaintiff's attorney wrote a letter to the defendants' attorney stating that the plaintiff's personal injury claim was worth over $50,000, including lost wages; the plaintiff did not file her personal injury lawsuit or attempt to settle it until after her bankruptcy was discharged; and the plaintiff never informed her bankruptcy attorney about her personal injury claim and vice versa. *Id.* ¶¶ 24-25.

¶ 49 We find *Barnes* to be helpful because the type of conduct that warranted the application of judicial estoppel there is not present here. In this case, the primary evidence that defendants rely on to show that plaintiffs intended to deceive or mislead the court is Gregory's deposition testimony wherein he stated that he "didn't know if [he] would do anything" when asked if he disclosed he might potentially file a personal injury lawsuit. We find that Gregory's statement, when read in context, does not evince an intent to deceive. The trial court stated that Gregory "testified that he knew of the claim but did not think he would file it when he was making his bankruptcy disclosures." This is simply not accurate. When viewed critically, Gregory's testimony raises more questions than it answers. The following is the critical exchange from Gregory's deposition:

"Q. While you may not have been asked it by the bankruptcy trustee, did you disclose the fact that you had been involved in an accident that could potentially result in a third-party action against other entities during the bankruptcy proceedings?

MR. CANTWELL [plaintiffs' attorney]: Objection. If he disclosed the workmen's comp claim, that certainly is about—There's no other workmen's comp claim he ever made, I don't think. Not that I know of.

Q. [Defendant ABM's attorney]: Do you understand my question?

A. You're asking me if I filed a lawsuit for workers' compensation—

Q. No. What I'm asking is, you testified that you disclosed that you had a workers' comp action—

---

[4]Although we have already set forth the facts of *Barnes* in this decision, we resummarize some of those pertinent facts for purposes of clarity. *Supra* ¶ 41.

A. That's right.

Q. —proceeding with respect to this incident. Did you disclose that you might potentially file a lawsuit with respect to something non-workers' compensation resulting from the December 15, 2010, accident regardless of whether you were asked it by the bankruptcy trustee or not?

A. I told him I had no idea. I didn't know if I would do anything because at that time I didn't even have my surgery.[5]

Q. Okay.

A. When I first talked to a—the bankruptcy lawyers, I had no idea that I would even file a lawsuit, period.

Q. But you had been injured as of at least that time, correct?

A. Yes."

¶ 50    Gregory's testimony does not indicate an intent to deceive. In fact, the meaning behind Gregory's testimony is unclear. Perhaps this is because at the time Gregory made the statement at issue he was already five hours into his deposition. In part, Gregory stated that, "I told him I had no idea." Although somewhat unclear whom "him" refers to, the context of the preceding questions seems to point to the trustee. However, in reviewing the transcript of the sole conversation between Gregory and the trustee,[6] which occurred at the August 8, 2012, meeting of the creditors, at no point does Gregory say he "had no idea" whether he would file a personal injury claim. In fact, Gregory's potential personal injury case is never addressed because, after Gregory mentions his workers' compensation claim, the trustee does not ask any further questions, and actually tells Gregory that: "We don't have to have this conversation because you get to keep 100% of any [w]orkers [c]ompensation award." We find this statement by the trustee to be somewhat similar to the factual scenario of *Seymour*. In *Seymour*, the uncontroverted affidavits of the plaintiffs and their bankruptcy attorney established that the trustee advised the plaintiffs that they had to disclose any lump sum of funds received in excess of $2000; thus, the court observed that it would be understandable that the plaintiffs, who were laymen, might have inferred that smaller sums, and perhaps even unliquidated claims for money, did not have to be disclosed. *Seymour*, 2015 IL 118432, ¶ 61. Here, the trustee informed Gregory, who is also a layman like the *Seymour* plaintiffs, that they need not have a conversation regarding his workers' compensation case, which could have led Gregory to infer that he need not disclose any more information about his injury or any potential claim arising therefrom. Defendants attempt to make plaintiffs out to be sophisticated, serial litigants. However, both of Gregory's prior lawsuits stemmed from motor vehicle accidents. Neither prior lawsuit involved workers' compensation, and there is no record evidence that plaintiffs ever filed for bankruptcy on another occasion. Additionally, unlike plaintiffs' workers' compensation case, which was filed on August 25, 2011, plaintiffs' personal injury claim was not filed at the time Gregory spoke to the trustee. Thus,

---

[5]Earlier in the deposition, Gregory testified that he had surgery on his shoulder in August 2011.

[6] Defendants repeatedly assert that plaintiffs were represented by counsel throughout their bankruptcy proceedings. While we do not doubt that they were, we believe it best to clarify that the transcript of the question and answer session between the trustee and Gregory does not indicate that plaintiffs' counsel was present.

the record before us does not establish that plaintiffs are the savvy litigants that defendants make them out to be.

¶ 51 Gregory's deposition testimony, that "at that time I didn't even have my surgery," raises another issue. This statement evinces confusion because the plaintiffs' bankruptcy petition was filed in June 2012 and Gregory had his shoulder surgery in August 2011; thus, Gregory had already had his shoulder surgery at the time he was examined by the trustee. Thus, his statement of "I didn't know if I would do anything because at that time I didn't even have my surgery" is nonsensical. In light of the *Seymour* decision and its emphasis on the importance on a party's intent to deceive, we refuse to presume that Gregory's testimony, which was unclear at best, evinced an intent to deceive or mislead.

¶ 52 Viewing all of the evidence before us in a light most favorable to plaintiffs, we find that the evidence presented fails to show that plaintiffs intended to deceive or mislead the bankruptcy court when filing their disclosures. Perhaps prior to the *Seymour* decision the result here may have been different. However, our supreme court has made it clear that they believe it best to deviate from the federal court's strict application of judicial estoppel regardless of intent. Because we have not found that plaintiffs were "deliberately changing positions," dismissal of their complaint would not satisfy the purpose of the doctrine of judicial estoppel. *Id.* ¶ 36. Therefore, where, as here, the record is void of sufficient evidence to establish that the party to be estopped intentionally failed to disclose a potential personal injury claim in order to deceive or mislead the court, dismissal on the basis of judicial estoppel is unwarranted.

¶ 53                                                      CONCLUSION

¶ 54 Based on the foregoing, we reverse the decision of the trial court that granted defendants' section 2-619 motion to dismiss, vacate any judgments entered thereto, and remand for further proceedings.

¶ 55 Reversed and remanded.